UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY D. KOLTON and S. DAVID GOLDBERG, individually and on behalf of classes of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL W. FRERICHS, Illinois State Treasurer, <br><br> Defendant. | 16 C 3792 |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter comes before the Court on the motion of Defendant Michael W. Frerichs ("Frerichs"), in his official capacity as the Illinois State Treasurer (the "Treasurer"), to dismiss, Dkt. 15, the Class Action Complaint (the "Complaint"), Dkt. 1, of Plaintiffs Anthony D. Kolton ("Kolton") and S. David Goldberg ("Goldberg"), individually, and on behalf of classes of all others similarly situated (collectively, "Plaintiffs") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 15, at p. 1. For the reasons set forth below, Frerichs's motion is granted under Rule 12(b)(1). The Court lacks subject-matter jurisdiction; consequently, it does not reach the merits of the case, nor does it rule on Frerichs's motion to dismiss under Rule 12(b)(6).

## BACKGROUND

For purposes of the instant motion, the following well-pleaded allegations derived from the Complaint are accepted as true. *Ed Miniat. Inc. v. Global Life Ins. Grp., Inc.*, 805 F.2d 732, 733 (7th Cir. 1986); *Dilallo v. Miller & Steeno, P.C., et al.*, No. 16 C 51, 2016 WL 4530319, at *1 (N.D. Ill. Aug. 30, 2016). The Court draws all reasonable inferences in favor of Plaintiffs and construes all allegations in the light most favorable to Plaintiffs. *Id.*

The Illinois Uniform Disposition of Unclaimed Property Act, 765 ILCS § 1025/1, *et seq.*, (the "Act"), pertains to personal property held by a third party (the "holder"). Dkt. 1, at p. 1, ¶ 2. Holders include, but are not limited to, banks, corporations, or public utilities. *Id.* The Act aims to "reunite owners with their property," and to permit the State of Illinois (the "State"), instead of the holder, to use the property prior to such a reunion. *Id.* at p. 4, ¶ 10.

Under the Act, personal property is "presumed abandoned" if its owner has not written to the holder regarding the property, or has not otherwise indicated interest in the property. *Id.* at p. 1–2, ¶ 2, p. 3–4, ¶ 10; *see* 765 ILCS § 1025/2. For private holders, the owner has five years to indicate an interest, and for government holders, the owner must act within a seven-year period. *Id.* If a holder determines that it possesses "presumed abandoned" property, it must then attempt to notify the owner. Dkt. 1, at p. 4, ¶ 11; *see* 765 ILCS 1025/11. If the owner does not claim his or her property, the holder is required to deliver it to the Treasurer's, Frerichs's, custody.

2

Dkt. 1, at p. 2, ¶ 2, p. 4, ¶ 11; *see* 765 ILCS 1025/13. While in his custody, Frerichs has "a reasonable time" to sell tangible property at a public sale for the highest bid. Dkt. 1, at p. 4, ¶ 11. To sell securities or commodities, Frerichs may engage "a suitable broker or sales agent." *Id.* Frerichs continues to hold the "presumed abandoned" property, and proceeds from the sale thereof, in custody for the owner. *Id.* At any time, the owner may reclaim his or her property from the State. *Id.* The "presumed abandoned" property, or proceeds, and its earnings also fund state programs. *Id.* at p. 2, ¶ 2.

Frerichs deposits all of the money received under the Act into the State Pension Fund. *Id.* at p. 4, ¶ 12; *see* 765 ILCS § 1025/18. Frerichs, however, is to retain an amount capped at two million, five hundred thousand dollars ($2,500,000) to ensure that owners who file approved claims to their property are promptly paid. *Id.* Property that is submitted to Frerichs in accordance with the Act "earns interest, dividends or other accruals," and it is sometimes "held in interest-bearing accounts or instruments." Dkt. 1, at p. 5, ¶ 14. The State Pension Fund uses such accruals. *Id.* Under the State Finance Act, 30 ILCS § 105/8.12 ("Section 105/8.12"), all of the reserves held in the State Pension Fund "are to be used for the administration of the Act and for partial payment of the State's required contributions to designated State employee retirement systems." Dkt. 1, at p. 4, ¶ 13; *see* 30 ILCS § 105/8.12. In accordance with Section 105/8.12, annually, the General Assembly is to appropriate

the monies in the State Pension Fund to state pension systems, to the exclusion of five million dollars ($5,000,000). Dkt. 1, at p. 4, ¶ 13.

The Act is distinct from an escheat statute. *Id.* at p. 5, ¶ 15. Under an escheat statute, the State may eventually gain title to abandoned property. *Id.* The Act, in contrast, "is purely custodial in nature." *Id.* Title to "presumed abandoned" property under the Act remains at all times with the owner. *Id.*

To reclaim his or her property, an owner would file a claim with the Treasurer. *Id.* at ¶ 16; *see* 765 ILCS § 1025/20. An owner is entitled only to the property that the holder has submitted to the State—or the proceeds from the sale thereof. Dkt. 1, at p. 2, ¶ 3, p. 5, ¶ 16, p. 6 ¶ 17. He or she is not entitled to "any interest or dividends or other increments that accrue on the property after delivery to the state," "the loss of the beneficial use of the property," "or use of that property to fund state obligations during the period it is in the state's custody." *Id.* at p. 2, ¶ 3; p. 6 ¶ 17; *see* 765 ILCS § 1025/15 ("When property is paid or delivered to the State Treasurer under this Act, the owner is not entitled to receive income or other increments accruing thereafter, except that income accruing on unliquidated stock and mutual funds after July 1, 1993, may be paid to the owner."). The Act disallows owners "from receiving interest, dividends or other income or increments on any property that is liquidated or is in a cash account, regardless of the nature of the property." Dkt. 1, at p. 6, ¶ 19; *see Cwik v. Giannoulias*, 237 Ill. 2d 409, 418–19 (2010). Plaintiffs allege, "on information and belief," that "it is the policy and practice of the Treasurer[] not to

4

return to the property owner any income or other increments which have accrued on mutual funds held in custody pursuant to the Act." Dkt. 1, at 6, ¶ 18. Dividend bearing securities are the exception to the rule: owners are entitled to dividends accrued before the security is sold. Dkt. 1, at p. 2, ¶ 3, p. 5–6, ¶ 17; *see Canel v. Topinka*, 342 Ill. App. 3d 65, 75 (2003), *aff'd*, 212 Ill. 2d 311 (2004).

The United States Court of Appeals for the Seventh Circuit decided, in *Cerajeski v. Zoeller*, that "unclaimed property" is distinct from "abandoned property" under the Indiana Unclaimed Property Act, a similar statute to the Act, holding "that the state's confiscation of interest on an interest-bearing account delivered to the State as unclaimed property [is] an unconstitutional taking of a portion of plaintiff's property for which just compensation [is] due." Dkt. 1, at 7, ¶ 21; 735 F.3d 577, 580 (7th Cir. 2013). In reliance on *Cerajeski*, on March 29, 2016, Plaintiffs filed the Complaint alleging that Frerichs, as Treasurer of the State of Illinois, violated 42 U.S.C. § 1983 ("Section 1983") and the Fifth and Fourteenth Amendments to the United States Constitution through his supervision and administration of the Act. Dkt. 1, at p. 1, ¶ 1.

Plaintiffs allege that the Act, by allowing the State to retain interest and other income on unclaimed property, as well as beneficially use the property without paying the owner, constitutes a taking without just compensation. *Id.* at p. 2, ¶ 4. Frerichs has at all times held and continues to hold property belonging to Plaintiffs in his custody. *Id.* at p. 2, ¶ 5, p. 3, ¶ 6, p. 8–9, ¶ 24, ¶ 27. Such property is subject to

5

"being claimed by or on behalf of" Plaintiffs. *Id.* at p. 9, ¶ 27. Plaintiffs are "owners" of property, as defined in the Act. *Id.* at p. 2, ¶ 5, p. 3, ¶ 6; *see* 765 ILCS § 1025/1(f). Kolton asserts that his unclaimed property exceeds a value of one hundred dollars ($100). Dkt. 1, at p. 8, ¶ 24. Kolton believes that Bank One delivered his property to the State, and that the State held it in an interest-bearing bank deposit account. *Id.* While in Frerichs's custody, the State has allegedly used Plaintiffs' property "for public purposes, including by investing the property and earning interest, and otherwise using it to fund the state's operations and programs." *Id.* at ¶ 25, p. 9, ¶ 28. Plaintiffs assert that under Sections 1025/15 and 1025/20 of the Act, if Plaintiffs claim their property, Frerichs will return it, but he will not compensate Plaintiffs for the interest accrued and seized by the State, or the State's use of the property while in its custody. *Id.* at p. 8, ¶ 26, p. 9, ¶ 29. Plaintiffs claim, based on *Cerajeski*, that the Fifth Amendment protects both "the principal of unclaimed property in the custody of the state," as well as "the 'fruits' of the property, that is, the interest, accruals or other value that attaches to the property or that is associated with the ownership of the property." *Id.* at p. 11, ¶ 40. Thus, Plaintiffs allege that they and the purported class members should receive just compensation for the State's taking of the interest or other increases in value of their property, which they claim is in violation of the Fifth Amendment. *Id.*

Plaintiffs Complaint contains two counts, each of which outlines multiple prayers for relief. Count I urges this Court to declare: (i) "that the state's use for

6

public purposes of the property delivered to the state under the act is a taking of property;" (ii) "that the proper measure of just compensation is the fair market value of property taken;" (iii) "the standard for Plaintiffs and the members of the Rule 23(b)(2) Class for measuring fair market value;" and (iv) "that Defendant must pay just compensation as determined by this Court to Plaintiffs and members of the Rule 23(b)(2) Class . . . who have filed claims or who file claims after the filing of this action." *Id.* at p. 13, ¶¶ C–F. In Count I, Plaintiffs also urge this Court to issue an injunction "to ensure" Frerichs's compliance. *Id.* at ¶ F. In Count II, Plaintiffs request that this Court award "Plaintiffs and members of the Damages Class just compensation as determined by this Court." *Id.* at p. 14, ¶ C. Both Counts I and II urge this Court to decide "that the state's confiscation of interest, dividends or other fruits of the property delivered to the state under the Act and used for public purposes is a taking of property . . . for which the state is required to pay just compensation." *Id.* at p. 12, ¶ A, p. 14, ¶ A. Plaintiffs also request that this Court certify this action under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3). *Id.* at p. 12, ¶ A, p. 14, ¶ A; *see Caraluzzi v. Prudential Sec., Inc.*, 824 F. Supp. 1206, 1210–11 (N.D. Ill. 1993) (explaining when a court may consider a motion to dismiss prior to addressing a class certification question). Finally, Plaintiffs ask the Court to award "their attorneys' fees and reimbursement of their expenses, including those provided in 42 U.S. C. § 1988;" as well as any other relief that this Court deems proper and just. Dkt. 1, at p. 13 ¶¶ G–H, p. 15 ¶¶ D–E. Plaintiffs have issued a jury demand for all

7

such triable claims. *Id.* at p. 15. On June 20, 2016, Frerichs moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Dkt. 16, at p. 1.

## **LEGAL STANDARD**

Federal courts are courts of limited jurisdiction; "they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Further, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Under Federal Rule of Civil Procedure 12(b)(1), the Court must dismiss the action if it determines that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *State of Ill. v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1988) ("Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further."); *H.O.P.E., Inc. v. Eden Mgmt. LLC*, 128 F. Supp. 3d 1066, 1073 (N.D. Ill. 2015). Plaintiffs bear the burden of proving that the Court has subject-matter jurisdiction. *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1022 (7th Cir. 2001). "[T]he court may properly look to evidence beyond the pleadings in this inquiry." *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998); *Revelis v. Napolitano*, 844 F. Supp. 2d 915, 919 (N.D. Ill. 2012). "In the event the court concludes it does not have jurisdiction, it can dismiss the case without ever reaching the merits." *Chavez v. Ill.*

*State Police*, No. 94CV5307, 1996 WL 66136, at *3 (N.D. Ill. Feb. 13, 1996) (citing *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987)).

## DISCUSSION

In the instant motion, Frerichs argues that the Court should dismiss the Complaint because it is not ripe under *Williamson County Regional Planning Commission et al. v. Hamilton Bank of Johnson City*. Dkt. 16, at p. 5, 13; *see* 473 U.S. 172 (1985). Specifically, Frerichs's argues that Plaintiffs have not met the two *Williamson* requirements—that of finality and exhaustion. *See* Dkt. 16, at p. 6. Plaintiffs, in response, maintain that their claims are not barred by *Williamson* because: (i) finality is not in issue; and (ii) Plaintiffs are making a facial challenge to the constitutionality of a state statute. Dkt. 21, at p. 11–13. The Court finds that the Complaint is not ripe, and grants Frerichs's motion to dismiss without prejudice.

The Takings Clause of the Fifth Amendment to the U.S. Constitution provides that private property shall not "be taken for public use, without just compensation." U.S. CONST. amend. V; *Williamson*, 473 U.S. at 194 ("The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation."). The Fifth Amendment "confirms the State's authority to confiscate private property," while placing two conditions on such authority: (i) "the taking must be for a 'public use,'" and (ii) "'just compensation' must be paid to the owner." *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 231–32 (2003). Thus, "ordinarily, compensation, not

9

an injunction, is the appropriate remedy for a taking that satisfies the public use requirement." *Peters v. Vill. of Clifton*, 498 F.3d 727, 731 (7th Cir. 2007).

Until Plaintiffs have been denied just compensation, there is no constitutional violation. *Id.*; *Williamson*, 473 U.S. at 194 n.13. Therefore, in *Williamson*, the Supreme Court outlined a ripeness doctrine applicable to claims pursuant to the Takings Clause. *Peters*, 498 F.3d at 731. Plaintiffs must satisfy the two *Williamson* prongs: "(1) a final decision by the government entity responsible for the taking[,] and (2) exhaustion of state procedures." *Id.* at 732 (describing "a two-pronged ripeness requirement for takings claims"); *see Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

Plaintiffs argue that *Williamson* is inapplicable to the case at hand because "there is no issue of finality" since the Act explicitly provides, "[w]hen property is paid or delivered to the State Treasurer under this Act, the owner is not entitled to receive income or other increments accruing thereafter, except that income accruing on unliquidated stock and mutual funds after July 1, 1993, may be paid to the owner," and therefore "there is no question that the denial [of compensation] is final." *See* Dkt. 21, at p. 12; 765 ILCS 1025/15. In deciding whether the State's withholding of interest earned on property held by the State pursuant to the Act and used for the State's purposes constituted a taking under the Fifth and Fourteenth Amendments for which just compensation was due, the Supreme Court of Illinois in *Cwik* emphasized that the Illinois legislature has the authority "to declare property statutorily

10

'abandoned' where the owners have failed to show interest in the property . . . . divest[ing] the owner of only certain incidents of ownership," and therefore not yielding a "taking that would require compensation." *Cwik*, 237 Ill. 2d at 422. Consequently, Plaintiffs contend that denial of compensation is indisputably final under the Act, and because there is no issue of finality, the *Williamson* analysis does not apply. Dkt. 21, at p. 12. Plaintiffs' emphasis on finality as a *prerequisite* to *Williamson* is misplaced; rather, finality is the first prong of the analysis.[1] *See Peters*, 498 F.3d at 732.

Plaintiffs next argue that Counts I and II are facial claims because they are "based on a finding that a State statute on its face violated the constitutional rights of property Owners." Dkt. 21, at p. 12–13. Plaintiffs correctly assert, and Frerichs does not dispute, that *Williamson* is inapplicable to facial challenges to the constitutionality of a state statute. *Id.* at p. 12 (citing *Yee v. City of Escondido*, 503 U.S. 519, 533–34 (1992)); *Daniels v. Area Plan Comm'n*, 396 F.3d 445, 458 n.13 (7th Cir. 2002) ("Litigants are not required to meet the *Williamson County* ripeness requirements when solely mounting a pre-enforcement facial challenge to the constitutionality of a statute under the Fifth Amendment."); *Peters*, 498 F.3d at 732 ("[T]he Supreme Court

---

[1] Although the Court in *Williamson* dealt with a purported regulatory taking, the Seventh Circuit has since recognized its applicability in cases of physical takings, which "are subject to a streamlined ripeness analysis." *Peters*, 498 F.3d at 732. Under this analysis, the taking itself is considered a final action, meeting the first prong of *Williamson*. *Id.*; *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 958 (7th Cir. 2004) ("We have held that a physical invasion constitutes a 'final decision' and thus satisfies *Williamson County*'s first requirement."). In cases of physical takings, then, the Court need only determine whether Plaintiffs have exhausted state court procedures. *Id.*

has held that many facial challenges to legislative action authorizing a taking can be litigated immediately in federal court."). Plaintiffs do, in fact, proclaim a pre-enforcement facial challenge to the Act, questioning whether Section 15 of the Act is facially unconstitutional, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution. *See* Dkt. 1, at p. 12–14. Specifically, plaintiffs seek a declaration that "the state's confiscation of interest, dividends, or other fruits of the property delivered to the state under the Act and used for public purposes is a taking of property within the meaning of the Fifth Amendment to the U.S. Constitution for which the state is required to pay just compensation." *Id.* at p. 12 ¶ B, p. 14 ¶ B. Plaintiffs further urge this Court to assert that "the state's use for public purposes of the property delivered to the state under the Act is a taking of property," and find that the State must pay just compensation. *Id.* at p. 12 ¶ B, p. 13 ¶ C, p. 14 ¶ B. The Court recognizes these three allegations as pre-enforcement facial challenges to the constitutionality of the Act because they do "not depend on the extent to which petitioners are deprived of the economic use of their particular pieces of property or the extent to which these particular petitioners are compensated." *Yee*, 503 U.S. at 534. Such facial challenges are not subject to the *Williamson* ripening requirement. The Court, however, holds that the majority of Plaintiffs' claims go beyond a facial challenge of the Act.

Plaintiffs seek more than a declaratory judgment, requesting that the Court determine and award the proper measure of just compensation that they claim is owed

to them and the purported class members, surpassing a facial challenge to the Act. *See* Dkt. 1, at p. 13–14. Here, Plaintiffs launch a post-enforcement challenge of the Act as it is specifically applied to Plaintiffs and the purported class members. Plaintiffs do not specify the type of property that Frerichs holds in his custody, *see id.* at p. 8–9, ¶¶ 24–29, and as Frerichs notes, interest rates will differ from one type of account to the next, which may result in a variety of factual scenarios and tailored calculations. Dkt. 22, at p. 7. Plaintiffs acknowledge that such an analysis is circumstance dependent. Dkt. 1, at p. 14, ¶ 47. Determination of such claims will rely "on the extent to which petitioners are deprived of the economic use of their particular pieces of property," and will therefore be subject to the *Williamson* analysis. *Yee*, 503 U.S. at 534.

"The Seventh Circuit has interpreted *Yee* to exempt a litigant from *Williamson County* only where a litigant is '*solely* mounting a pre-enforcement facial challenge to the constitutionality of a statute under the Fifth Amendment.'" *CBS Outdoor, Inc. v. Vill. of Itasca, Ill.*, No. 08 C 4616, 2009 WL 3187250, at *3 (N.D. Ill. Sept. 30, 2009) (quoting *Daniels*, 306 F.3d at 458 n.13) (emphasis added). The Court in *CBS Outdoor, Inc.* held that plaintiff's claim was not ripe for adjudication because it alleged "more than a facial challenge." *Id.* Likewise, here, Plaintiffs' claims exceed

13

merely a facial challenge to the Act, and therefore, they are all unripe for adjudication.[2]

Nonetheless, Plaintiffs do not claim to have exhausted state remedies, so their non-facial claims are barred under *Williamson*'s second prong. In the Complaint, Plaintiffs merely speculate as to what Frerichs would do if they were to file a claim with the State Treasurer. Dkt. 1, at p. 9, ¶ 29 ("Under §§ 1025/15 and 1025/20 of the Act, should Plaintiff claim his property, Defendant will return the property delivered by the holder, but will not pay just compensation for the confiscation of interest or use of that property during the period of custody."). Plaintiffs do not actually allege that they have filed a claim pursuant to the Act. *See id.*; *Yee*, 503 U.S. at 533–34 (concluding that petitioners presented a facial challenge to the regulatory ordinance at issue in *Yee*, but noting "that a claim that the ordinance effects a regulatory taking as applied to petitioners' property would be unripe" when "petitioners have not sought

---

[2] The Court's decision is not inconsistent with the Seventh Circuit's holding in *Cerajeski*, as we are unable to reach the merits of the case. *See Cerajeski*, 735 F.3d at 579–80, 583 (holding that the provision of the Indiana Unclaimed Property Act that authorized the state to retain interest earned on plaintiff's small, interest-bearing account, while providing plaintiff only with his principal upon return of the unclaimed property, was a taking, and plaintiff was entitled to just compensation). The Court in *Cerajeski* analogized plaintiff's bank account to an apple orchard: had a nearby farmer occupied the orchard, picking and selling apples over the course of years, it is clear that the farmer, although he is entitled to a reasonable fee for his productive use and sale of the apples, would not be authorized to keep all of the sales revenue. *Id.* at 580. Undoubtedly, the farmer must compensate the apple orchard's owner for having appropriated the apples. *Id.* However, the Court remanded the case, noting that "the amount of just compensation has yet to be determined," and demonstrating confusion as to why plaintiff sought an injunction: "'[e]quitable relief is not available to enjoin an alleged taking of private property for a public use.'" *Id.* at 583 (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984)). Here, the Court is unable to rule on the merits, as the questions presented, including the extent of the reasonable fee for guardianship of the property and the amount of just compensation to which Plaintiffs may be entitled, are both non-facial issues, barred under *Williamson*. *See id.*

rent increases") (emphasis omitted). In accordance with the Act, should Plaintiffs do so, "[a]ny claim of an interest in property that is filed . . . shall be considered and a finding and decision shall be issued by the Office of the State Treasurer in a timely and expeditious manner." 765 ILCS 1025/20(a). Nor do Plaintiffs allege that they have litigated their claims in state court. *See generally* Dkt. 1, 21. "Illinois provides an inverse condemnation action for aggrieved property owners." *Biddison v. City of Chicago*, 921 F.2d 724, 727 (7th Cir. 1991) (citing Ill. Const. art. I § 15) ("Private property shall not be taken or damaged for public use without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law."). "If a state provides adequate procedures for seeking just compensation, a property owner cannot state a claim under federal law until he has used those procedures and has been denied just compensation." *Harbours Pointe of Nashotah, LLC v. Vill. of Nashotah*, 278 F.3d 701, 704 (7th Cir. 2002) (citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 721 (1999)); *Williamson*, 473 U.S. at 195 ("[T]he State's action is not 'complete' in the sense of causing constitutional injury 'unless or until the State fails to provide an adequate post[-]deprivation remedy for the property loss.'"). Plaintiffs do not contend that state court remedies are unavailable or inadequate.[3] *See generally* Dkt. 1, 21. Plaintiffs, therefore, have yet to

---

[3] The Court in *Williamson* adopted a narrow exception to the second prong requiring exhaustion of state court remedies if such an effort would be futile. *Daniels*, 306 F.3d at 456. Under this exception, Plaintiffs would bear the burden of demonstrating that "the inverse condemnation procedure is unavailable or inadequate" to ripen their claims. *Williamson*, 473 U.S. at 197; *Peters*, 498 F.3d at 732.

15

be denied just compensation, rendering their claims premature. *San Remo Hotel L.P. v. City & Cty. of San Francisco, Cal.*, 545 U.S. 323, 331 (2005) (noting that the appellate court affirmed the district court's determination "that petitioner's as-applied takings claim—the claim that the application of the [Hotel Conversion Ordinance] to the San Remo Hotel violated the Takings Clause—was unripe," and stating that "[b]ecause petitioners had failed to pursue an inverse condemnation action in state court, they had not yet been denied just compensation as contemplated by *Williamson County*.").

Finally, the Court briefly addresses Plaintiffs' broader contention that state court may not be a proper forum for Plaintiffs to litigate their federal constitutional challenges. Dkt. 21, at p. 12–13. "[T]here is scant precedent for the litigation in federal district court of claims that a state agency has taken property in violation of the Fifth Amendment's Takings Clause." *San Remo Hotel, L.P.*, 545 U.S. at 346 ("It is hardly a radical notion that, as a practical matter, a significant number of plaintiffs will necessarily litigate their federal takings claims in state courts."). Moreover, the Fourth Circuit has aptly stated, *Williamson* "puts such issues in the most competent hands; it minimizes conflicting holdings in state and federal courts . . . and it reduces the risk that legitimate exercises of state police power in furtherance of important goals—such as public health, public welfare, and environmental protection—will be impeded." *Holliday Amusement Co. of Charleston v. South Carolina*, 493 F.3d 404, 409 (4th Cir. 2007). Consequently, Plaintiffs' assertion lacks merit.

## **CONCLUSION**

For the aforementioned reasons, Frerichs's motion to dismiss the Complaint for lack of subject-matter jurisdiction is granted without prejudice. Dkt. 15. Accordingly, the Court does not rule on Frerichs's rule 12(b)(6) motion to dismiss for failure to state a claim.

_____
Charles P. Kocoras
United States District Judge

Dated: 9/16/2016