**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY D. KOLTON, S. DAVID GOLDBERG, and JEFFREY S. SCULLEY, individually and on behalf of a class of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 16-cv-3792 |
| | ) | |
| MICHAEL W. FRERICHS, Treasurer of the State of Illinois, | ) ) | The Honorable Charles Kocoras |
| | ) | |
| Defendant. | ) | |

**AMENDED AND SUPPLEMENTAL
CLASS ACTION COMPLAINT**

Plaintiffs, Anthony D. Kolton, S. David Goldberg, and Jeffrey S. Sculley, each individually and on behalf of the Class as defined below, for their Amended and Supplemental Class Action Complaint (the "Complaint") against Defendant Michael W. Frerichs, Treasurer of the State of Illinois, in his official capacity, state as follows:

**INTRODUCTION**

1.      This is an action under 42 U.S.C. § 1983 and under the United States Constitution for declaratory and injunctive relief. It challenges the constitutionality under the Fifth and Fourteenth Amendments to the United States Constitution of the provision of the Illinois Uniform Disposition of Unclaimed Property Act, 765 ILCS § 1025/1, *et seq.* ("UPA" or the "Act"), which authorizes the state to take for public use without just compensation private property that the state classifies as "presumed abandoned" pursuant to the provisions of the Act.

2.      The Act applies to personal property that is held by a third party (the "holder"), for example, a bank, insurance company, corporation, or public utility. Under the Act such property is "presumed abandoned" if the owner, as defined in the Act, has not communicated in writing with the holder concerning the property or has not otherwise given an indication of interest in the property within a period of five years for private holders and seven years for government holders. Property that is "presumed abandoned" must be delivered to Defendant's custody. That property, proceeds from any sale of any such property that was not in cash form when it was taken into custody, and earnings on any such property, are all used to fund state programs or operations.

3.      An owner may reclaim property from the state; however, the UPA provides that an owner who files a valid claim is entitled only to the property turned over to the state by the holder (or the proceeds from the sale of that property) and not to any interest or dividends or other increments that accrue on the property after delivery to the state. However, in the case of dividend-bearing securities, the owner is entitled to any dividends that accrue prior to sale of the security. Nor does the Act provide for compensation for the state's taking of these fruits of the property or use of that property to fund state obligations during the period it is in the state's custody.

4.      The Court of Appeals for the Seventh Circuit in *Kolton v. Frerichs*, 869 F.3d 532, 2017 U.S. App. LEXIS 16009 (7th Cir. 2017), held that the Act violated the Takings Clause of the Fifth Amendment because it denies the owner of property the benefit of the property's earnings.

- 2 -

5.      In this Complaint, Plaintiffs seek a declaration that the Act, in providing for the state's confiscation of the interest and other earnings on unclaimed property and its beneficial use of the property without just compensation, is a taking for which Plaintiffs and the Class they represent are entitled to just compensation. Plaintiffs also seek an injunction to implement that declaration .

## PARTIES

6.      Plaintiff Anthony D. Kolton is and has been at all relevant times a citizen and resident of Cook County, Illinois. Plaintiff is an "owner" of property, as defined in 765 ILCS § 1025/1(f) of the Act, that is currently held in custody by Defendant.

7.      Plaintiff S. David Goldberg is and has been at all relevant times a citizen and resident of Cook County, Illinois. Plaintiff is an "owner" of property, as defined in 765 ILCS § 1025/1(f) of the Act, that is currently held in custody by the Defendant.

8.      Plaintiff Jeffrey S. Sculley is and has been at all relevant times a citizen and resident of New York. Plaintiff is an "owner" of property, as defined in 765 ILCS § 1025/1(f) of the Act, that is currently held in custody by the Defendant.

9.      Defendant Michael W. Frerichs is the Treasurer of the State of Illinois. In that position, pursuant to the UPA, Defendant, or any predecessor or successor in that position, is and has been in charge of supervising and administering the Act. Plaintiffs sue Defendant Frerichs in his official capacity. In that capacity, he resides in this District and is subject to suit in this District.

## JURISDICTION AND VENUE

10.      The claims in this Complaint arise under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. As such,

jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. *See Kolton v. Frerichs*, 869 F.3d 532, 2017 U.S. App. LEXIS 16009 (7th Cir. 2017). In addition, this Complaint involves a claim for a Declaratory Judgment under 28 U.S.C. § 2201, *et seq*.

11.     Venue is proper in this District because Defendant resides in and is subject to suit in this District, and because a substantial portion of the events that underlie the claims asserted here occurred in this District.

## STATEMENT OF FACTS

### The Act and Its Operation

12.     The UPA, as with most other Unclaimed Property Acts adopted by various states, is modeled after a Uniform Unclaimed Property Act promulgated by the Uniform Law Commission. As alleged above, the UPA provides that private property is "presumed abandoned" if the owner or apparent owner has not communicated in writing with the holder concerning the property or has not otherwise given an indication of interest in the property for a certain period of time. 765 ILCS § 1025/2. The purpose of the UPA is twofold: first, to reunite owners with their property, and second, to allow the state rather than the holder to use the property before it is reunited with its owner.

13.     Once a holder determines property in its possession is "presumed abandoned" within the meaning of the UPA, the holder is required to attempt to notify the owner and, if the property is not claimed by the owner, to deliver the property into the custody of the office of the Treasurer. 765 ICLS § 1025/11. If the property is tangible property, Defendant is required to sell the property within a reasonable time to the

highest bidder at a public sale. 765 ILCS § 1025/17(a). Securities or commodities may be sold through a suitable broker or sales agent. *Id.* The unclaimed property and proceeds from the sale of unclaimed property are to be held in custody for the owner, who can reclaim the property from the State at any time. 765 ILCS §§ 1025/14 and 1025/19.

14.     The Act directs the State Treasurer to deposit all funds received pursuant to the Act, including funds from the liquidation of property, into the State Pension Fund, except that an amount may be retained by the State Treasurer to ensure prompt payment of approved claims filed by owners of unclaimed property. 765 ILCS § 1025/18.

15.     Pursuant to Section 105/8.12 of the State Finance Act, 30 ILCS § 105/8.12, all monies held in the State Pension Fund are to be used for the administration of the Act and for partial payment of the State's required contributions to designated State employee retirement systems. Section 105/8.12 further provides that each year the General Assembly is to appropriate the balance in the State Pension Fund, minus $5 million, to the various State pension systems. As of April 2017, Defendant held approximately $2.8 billion pursuant to the Act. Between January 2015 and April 2017 Defendant had returned more than $250 million to unclaimed property owners.

16.     Property remitted to the Defendant and the State pursuant to the Act earns interest, dividends or other accruals, and/or is held in interest-bearing accounts or instruments, and such interest, dividends and other accruals are used by the State Pension Fund. The Treasurer periodically transfers all interest earned on unclaimed property to the State's General Revenue Fund to meet the State's financial obligations. 15 ILCS § 520/2.

17.     Unlike an escheat statute, in which actual title to abandoned property may eventually vest in the State after certain due process procedures are followed, the Act is purely custodial in nature, and title to abandoned property is never transferred from the owner to the State of Illinois. Thus, title and ownership at all times remain with the original owner of the property. As stated in the Prefatory Note to the Uniform Disposition of Unclaimed Property Act (Rev. 1966 Act), which, with amendment, was adopted by the State of Illinois and forms the basis of the current Act:

> The Uniform Act is custodial in nature -- that is to say, it does not result in the loss of the owner's property rights. The state takes custody and remains the custodian in perpetuity. . . . In this respect the measure differs from the escheat type of statute, pursuant to which the right of the owner is foreclosed and title to the property passes to the state.

18.     While the UPA recognizes that unclaimed property remains the private property of the owner and provides that unclaimed property owners may reclaim their property by filing a valid claim with the Treasurer, 765 ILCS § 1025/20(b), it also provides that "[w]hen property is paid or delivered to the State Treasurer under this Act, the owner is not entitled to receive income or other increments accruing thereafter, except that income accruing on unliquidated stock and mutual funds ... may be paid to the owner." 765 ILCS § 1025/15.

19.     Although the Act gives the Treasurer discretion whether to return income on stocks or mutual funds held pursuant to the Act (as described in Paragraph 18, above), the Illinois Supreme Court in *Canel v. Topinka*, 212 Ill.2d 311, 818 N.E.2d 311 (2004), held that dividends issued on shares of stock while in State custody (and prior to the liquidation by sale) are the property of the owner and the owner is entitled to the

dividends or just compensation for the taking of the dividends when the stock or its purchase price is claimed. The Illinois Supreme Court, however, limited its analysis to dividends issued on stock while held in State custody. On information and belief, the Treasurer does not return to the property owner any income or other increments which have accrued on mutual funds held in custody pursuant to the Act. Other than the narrow category of dividends on stock in state custody, the UPA does not compensate the owner of property for lost interest, dividends, or other earnings or accruals on the principal, or the loss of the beneficial use of property, while it is in State custody.

20.     Moreover, by its terms, the Act prohibits owners of unclaimed property from receiving interest, dividends or other income or increments on any property that is liquidated or is a cash account, regardless of the nature of the property. 765 ILCS § 1025/15. In *Cwik v. Giannoulias*, 237 Ill.2d 409, 930 N.E. 2d 990 (2010), the Illinois Supreme Court upheld the constitutionality of that provision. In 2013, however, the United States Court of Appeals for this Circuit, in considering the constitutionality of Indiana's Unclaimed Property Act, rejected the view that unclaimed property was abandoned property subject to escheat, and held that the state had taken a portion of plaintiff's unclaimed property and was required to compensate her for this taking. *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013). In *Cerajeski*, the Court of Appeals compared the taking of the interest on Cerajeski's principal to the taking of fruit that grows on trees. In both cases, the custodian of the property must compensate the owner for the custodian's taking and enjoyment of the fruits of the property.

21.     In *Kolton v. Frerichs*, 869 F.3d 532, 2017 U.S. App. LEXIS 16009 (7th Cir. 2017), the Court of Appeals held that the same principles and precedents that governed

the Indiana statute that was at issue in *Cerajeski* apply to the Illinois statute. The Court of Appeals reasoned (2017 U.S. App. LEXIS 16009, at *2-*3):

> The Supreme Court has held that the Takings Clause protects the time value of money just as much as it does money itself. *Brown v. Legal Foundation of Washington*, 538 U.S. 216, 235, 123 S. Ct. 1406, 155 L. Ed. 2d 376 (2003); *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 165-72, 118 S. Ct. 1925, 141 L. Ed. 2d 174 (1998); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162-65, 101 S. Ct. 446, 66 L. Ed. 2d 358 (1980). In *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013), we applied these precedents to an Indiana statute like the Illinois statute in this case. We held that a state may not take custody of property and retain income that the property earns. A state may charge a bookkeeping fee, which for small accounts may exceed the property's time value, but must allow the owner the benefit of the property's earnings, however large or small they turn out to be. *Id.* at 578-80.

22.    In July of 2017, the Illinois General Assembly enacted Public Law 100-0022, which will replace certain provisions of the Act with provisions from the Revised Uniform Unclaimed Property Act. That revision will become effective as of January 1, 2018. It will not change Illinois law in any respect that is material to the claims in this lawsuit, because, under the revised statute, Illinois will still not pay interest on money that it holds in custody as unclaimed property. Section 15-607 of Public Law 100-022 provides: "Interest on money is not payable to an owner for periods where the property is in the possession of the [Treasurer]." As of the date of this filing, the provisions of Public Law 100-022 do not yet have official cites in the Illinois Compiled Statutes (ILCS).

## Plaintiffs' Property

23.    According to the Defendant's online records, Defendant holds Mr. Kolton's property in custody. That property includes unclaimed property of more than $100, which, upon information and belief as recalled by Mr. Kolton was held in an interest-bearing bank deposit account and delivered to the state by Bank One. Mr. Kolton is the owner under the Act with respect to that property, and with respect to other property as to which no claim has been filed. Defendant has at all times since held Mr. Kolton's property in custody subject to its being claimed by or on behalf of Mr. Kolton.

24.    While the Defendant held Mr. Kolton's property in custody, the state used the property for public purposes, including by investing the property and earning interest, and otherwise using it to fund the state's operations and programs.

25.    Under §§ 1025/15 and 1025/20 of the Act, should Plaintiff claim his property, Defendant will return the property delivered by Bank One and other holders, but will not pay just compensation for the confiscation of interest or use of that property during the period of custody.

26.    According to the Defendant's online records, Defendant holds Mr. Goldberg's property in custody. Mr. Goldberg is an owner under the Act with respect to that property. Defendant has at all times since held that property in custody subject to its being claimed by or on behalf of Mr. Goldberg.

27.    While the Defendant held Mr. Goldberg's property in custody, the state used the property for public purposes, including by investing the property and earning interest, and otherwise using it to fund the state's operations and programs.

28.     Under §§ 1025/15 and 1025/20 of the Act, should Plaintiff claim his property, Defendant will return the property delivered by the holder, but will not pay just compensation for the confiscation of interest or use of that property during the period of custody.

29.     According to the Defendant's online records, Defendant holds Mr. Sculley's property in custody. That property includes unclaimed property as follows: (a) property of less than $100, which was held in an interest-bearing savings account and delivered to the state by the University of Illinois Employees' Credit Union; and (b) property of less than $100, which was held in a checking account and delivered to the state by the University of Illinois Employees' Credit Union. Mr. Sculley is the owner under the Act with respect to that property, and with respect to other property as to which no claim has been filed. Defendant has at all times since held Mr. Sculley's property in custody subject to its being claimed by or on behalf of Mr. Sculley.

30.     While the Defendant held Mr. Sculley's property in custody, the state used the property for public purposes, including by investing the property and earning interest, and otherwise using it to fund the state's operations and programs.

31.     Under §§ 1025/15 and 1025/20 of the Act, should Plaintiff claim his property, Defendant will return the property delivered by the University of Illinois Employees' Credit Union and other holders, but will not pay just compensation for the confiscation of interest or use of that property during the period of custody.

## CLASS ACTION ALLEGATIONS

32.     Plaintiffs bring this action on their own behalf and as a class action

pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure seeking

declaratory and prospective injunctive relief on behalf of the following class (the

"Class"):

> All persons or entities (including their heirs, assignees, legal
> representatives, guardians, administrators, and successors in interest)
> whose property is being held, or has been held in the custody of the State
> of Illinois under the Illinois Uniform Disposition of Unclaimed Property
> Act, 765 ILCS § 1§ 1025/1, *et seq.* (or under the revised version of that
> statute that goes into effect on January 1, 2018), and whose property has
> been returned or will be returned at any time on or after March 29, 2013.

33.     The members of the Class are so numerous that joinder of all members is

impracticable. There are currently hundreds of thousands of persons or entities who

own property presumed abandoned and held in custody by Defendant under the Act.

In a press release dated July 17, 2017, Defendant announced that he was holding more

than $2 billion in unclaimed property in custody, and that in the most recent fiscal year

he had returned more than $159 million in property to owners. The average amount of

each claim is too small to warrant an individual action challenging the Act's

constitutionality, making joinder of all class members impracticable.

34.     Plaintiffs' claims are typical of the claims of the members of the Class.

Plaintiffs' property is being or has been held in custody under the Act by Defendant

and, while in state custody, is or was subject to the same provisions of the Act that

prohibit the state from compensating other owners of unclaimed property for lost

interest or earnings on that property or for its use.

35.     Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel competent and experienced in class action litigation.

36.     There are questions of law and fact common to the Class, including the following:

a.     whether the state's retention of interest, dividends and other earnings or accruals on unclaimed property is a taking for which just compensation is due;

b.     whether the state's use of unclaimed property in its custody for public purposes is a taking for which just compensation is due;

c.     the proper measure of compensation for the Class;

d.     the amount of interest, earnings and benefit realized by the state from the use of the Class' unclaimed property; and

e.     the appropriate injunctive and declaratory relief for the Class.

37.     Plaintiffs' claims arise out of the same common course of conduct by Defendant giving rise to the claims of the other members of the Class. Defendant has acted and refused to act on grounds that apply generally to the Class so that injunctive and declaratory relief are appropriate.

## COUNT I
### (CLAIM FOR DECLARATORY AND PROSPECTIVE INJUNCTIVE RELIEF ON BEHALF OF PLAINTIFFS AND THE CLASS)

38.     Plaintiffs reallege Paragraphs 1–37 as though fully set forth herein.

39.     Plaintiffs bring this Count I individually and on behalf of the Class described above.

40.     As the Court of Appeals for the Seventh Circuit has recognized, the Fifth Amendment to the United States Constitution protects not only the principal of unclaimed property in the custody of the state, but also the "fruits" of the property (that is, the interest, accruals or other benefit of the property's earnings that attaches to the property or that is associated with the ownership of the property, including the time value of money). Accordingly, upon return of their unclaimed property, Plaintiffs and the members of the Class are entitled to just compensation for loss occasioned by the state's taking of the fruits of their property in violation of the Fifth Amendment to the U.S. Constitution.

41.     While the amount of just compensation will depend on the circumstances, the measure of just compensation should be based on the value of the property taken and returned to the owner, and should take into account the time value of money and the value to the state of the benefit conferred from beneficial use of the property.

42.     The Defendant's unlawful course of conduct will continue absent a declaration from this Court that Defendant's conduct violates the rights of the Plaintiffs and the members of the Class and an injunction from this Court requiring the Defendant to change the course of conduct that is described above.

43.     Plaintiffs and the members of the Class are entitled to a judgment declaring their rights with respect to the conduct set forth in this Complaint. Therefore, judgment may issue under 28 U.S.C. § 2201, *et seq.*

**WHEREFORE**, Plaintiffs pray that the Court enter judgment in their favor and against Defendant as follows:

A.      Declaring that this action may be maintained as a class action pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the Class defined above and that Plaintiffs are proper Class representatives and designating their counsel as Class Counsel;

B.      Declaring that the state's confiscation of interest, dividends, earnings, or other fruits of the property delivered to the state and used for public purposes under the Act (and under the revision under Public Law 100-0022) is a taking of property within the meaning of the Fifth Amendment to the U.S. Constitution for which the state is required to pay just compensation;

C.      Declaring that the proper measure of just compensation is the value of the property taken and returned to the owner, taking into account the time value of money and value to the state of the benefit of the property;

D.      Declaring the standard for Plaintiffs and the members of the Class for measuring the value of property taken;

E.      Declaring that Defendant must pay just compensation according to the standard determined by this Court, and issuing an injunction to ensure that the State complies with that Declaration when returning property to owners of unclaimed property;

   F.  Awarding Plaintiffs their attorneys' fees and reimbursement of their expenses, pursuant to 42 U.S.C. § 1988 and applicable principles of equity; and

   G.  Awarding such other and further relief as the Court deems just and proper.

Anthony D. Kolton, S. David Goldberg, and Jeffrey S. Sculley, individually and on behalf of a Class of Other Similarly Situated,

October 10, 2017

/s/ Thomas A. Doyle

_____
One of the Attorneys for Plaintiffs

Arthur Susman
Law Offices of Arthur Susman
55 West Wacker Drive, Suite 1400
Chicago, Illinois 60601
Tel: 312-800-2351
arthur@susman-law.com

Terry Rose Saunders
The Saunders Law Firm
120 N. LaSalle Street, Suite 2000
Chicago, Illinois 60602
Tel: 312-444-9656
tsaunders@saunders-lawfirm.com

Thomas A. Doyle
Wexler Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Tel: 312-346-2222
tad@wexlerwallace.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on October 10, 2017, I caused a copy of the foregoing document to be served on Counsel for the Defendant via the Court's ECF system.

/s/ Thomas A Doyle