**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY D. KOLTON et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 16-cv-3792 |
| | ) | |
| v. | ) | Hon. Charles Kocoras |
| | ) | |
| MICHAEL W. FRERICHS, Illinois State Treasurer, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT MICHAEL FRERICHS' ANSWER TO PLAINTIFFS' AMENDED AND
SUPPLEMENTAL CLASS ACTION COMPLAINT**

The Defendant, Michael Frerichs, in his official capacity as Illinois State Treasurer, by

his counsel, Lisa Madigan, Illinois Attorney General, Answers Plaintiffs' Amended and

Supplemental Class Action Complaint as follows:

**INTRODUCTION**

1.      This is an action under 42 U.S.C. § 1983 and under the United States Constitution
for declaratory and injunctive relief. It challenges the constitutionality under the Fifth and
Fourteenth Amendments to the United States Constitution of the provision of the Illinois
Uniform Disposition of Unclaimed Property Act, 765 ILCS § 1025/1, *et seq*. ("UPA" or the
"Act"), which authorizes the state to take for public use without just compensation private
property that the state classifies as "presumed abandoned" pursuant to the provisions of the Act.

**ANSWER:** Defendant admits this action is brought under 42 U.S.C. § 1983 and the United

States Constitution and seeks relief regarding the Illinois unclaimed property statute. Defendant

denies that this statute violates the Constitution.

2.      The Act applies to personal property that is held by a third party (the "holder"),
for example, a bank, insurance company, corporation, or public utility. Under the Act such
property is "presumed abandoned" if the owner, as defined in the Act, has not communicated in
writing with the holder concerning the property or has not otherwise given an indication of
interest in the property within a period of five years for private holders and seven years for
government holders. Property that is "presumed abandoned" must be delivered to Defendant's

custody. That property, proceeds from any sale of any such property that was not in cash form when it was taken into custody, and earnings on any such property, are all used to fund state programs or operations.

**ANSWER:** Defendant denies that there is a seven year period of abandonment for government holders as Public Act 99-577 changed this to five years. Defendant admits that for many types of property held by private holders the period of abandonment is five years. Defendant, however, refers to the text of the Act wherein there are other periods of abandonment and other triggers beyond owner interest for certain types of property. Defendant admits that property remitted under the Act, along with earnings on such property, is used for public purposes by the State while in the custody of the State Treasurer. Defendant denies that "all" such property is used to fund state programs or operations, as Defendant returns hundreds of millions of dollars to legal owners.

3.     An owner may reclaim property from the state; however, the UPA provides that an owner who files a valid claim is entitled only to the property turned over to the state by the holder (or the proceeds from the sale of that property) and not to any interest or dividends or other increments that accrue on the property after delivery to the state. However, in the case of dividend-bearing securities, the owner is entitled to any dividends that accrue prior to sale of the security. Nor does the Act provide for compensation for the state's taking of these fruits of the property or use of that property to fund state obligations during the period it is in the state's custody.

**ANSWER:** Defendant admits that an owner may reclaim property from the state, but that under Illinois law interest on any monies is not paid. Defendant admits that the statute provides that stock dividends related to unclaimed stock is returned to verified owners making a claim.

4.     The Court of Appeals for the Seventh Circuit in *Kolton v. Frerichs*, 869 F.3d 532, 2017 U.S. App. LEXIS 16009 (7th Cir. 2017), held that the Act violated the Takings Clause of the Fifth Amendment because it denies the owner of property the benefit of the property's earnings.

**ANSWER:** Defendant admits that the Seventh Circuit decision held that the Act was

unconstitutional in certain applications. Defendant denies the remaining allegations of paragraph

4.


5.      In this Complaint, Plaintiffs seek a declaration that the Act, in providing for the state's confiscation of the interest and other earnings on unclaimed property and its beneficial use of the property without just compensation, is a taking for which Plaintiffs and the Class they represent are entitled to just compensation. Plaintiffs also seek an injunction to implement that declaration.

**ANSWER:**  Defendant admits plaintiffs seek declaratory and injunctive relief. Defendant denies

that plaintiffs are entitled to relief of the scope and extent they seek in their complaint.


## PARTIES

6.      Plaintiff Anthony D. Kolton is and has been at all relevant times a citizen and resident of Cook County, Illinois. Plaintiff is an "owner" of property, as defined in 765 ILCS § 1025/1(f) of the Act, that is currently held in custody by Defendant.

**ANSWER:** Defendant has insufficient knowledge or information to form a belief as to the truth

of the allegations of paragraph 6.


7.      Plaintiff S. David Goldberg is and has been at all relevant times a citizen and resident of Cook County, Illinois. Plaintiff is an "owner" of property, as defined in 765 ILCS § 1025/1(f) of the Act, that is currently held in custody by the Defendant.

**ANSWER:** Defendant has insufficient knowledge or information to form a belief as to the truth

of the allegations of paragraph 7.


8.      Plaintiff Jeffrey S. Sculley is and has been at all relevant times a citizen and resident of New York. Plaintiff is an "owner" of property, as defined in 765 ILCS § 1025/1(f) of the Act, that is currently held in custody by the Defendant.

**ANSWER:** Defendant has insufficient knowledge or information to form a belief as to the truth

of the allegations of paragraph 8.

9. Defendant Michael W. Frerichs is the Treasurer of the State of Illinois. In that position, pursuant to the UPA, Defendant, or any predecessor or successor in that position, is and has been in charge of supervising and administering the Act. Plaintiffs sue Defendant Frerichs in his official capacity. In that capacity, he resides in this District and is subject to suit in this District.

**ANSWER:** Defendant admits the allegations of paragraph 9, except that Defendant Michael W.

Frerichs resides in Champaign in the Central District of Illinois, but maintains an official office

in Chicago in this District.

## JURISDICTION AND VENUE

10. The claims in this Complaint arise under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. As such, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. See *Kolton v. Frerichs*, 869 F.3d 532, 2017 U.S. App. LEXIS 16009 (7th Cir. 2017). In addition, this Complaint involves a claim for a Declaratory Judgment under 28 U.S.C. § 2201, *et seq.*

**ANSWER:** Defendant admits the allegations of paragraph 10.

11. Venue is proper in this District because Defendant resides in and is subject to suit in this District, and because a substantial portion of the events that underlie the claims asserted here occurred in this District.

**ANSWER:** Defendant admits the allegations of paragraph 11, except that Defendant Michael W.

Frerichs resides in Champaign in the Central District of Illinois, but maintains an official office

in Chicago in this District.

## STATEMENT OF FACTS

### The Act and Its Operation

12. The UPA, as with most other Unclaimed Property Acts adopted by various states, is modeled after a Uniform Unclaimed Property Act promulgated by the Uniform Law Commission. As alleged above, the UPA provides that private property is "presumed abandoned" if the owner or apparent owner has not communicated in writing with the holder

concerning the property or has not otherwise given an indication of interest in the property for a certain period of time. 765 ILCS § 1025/2. The purpose of the UPA is twofold: first, to reunite owners with their property, and second, to allow the state rather than the holder to use the property before it is reunited with its owner.

**ANSWER:** Defendant admits the allegations of paragraph 12, except Defendant refers to the Act wherein for some types of property the trigger for a presumption of abandonment is something other than owner interest, and Defendant notes a third purpose of unclaimed property acts is to relieve holders of liability for unclaimed property in their possession.

13. Once a holder determines property in its possession is "presumed abandoned" within the meaning of the UPA, the holder is required to attempt to notify the owner and, if the property is not claimed by the owner, to deliver the property into the custody of the office of the Treasurer. 765 ICLS § 1025/11. If the property is tangible property, Defendant is required to sell the property within a reasonable time to the highest bidder at a public sale. 765 ILCS § 1025/17(a). Securities or commodities may be sold through a suitable broker or sales agent. Id. The unclaimed property and proceeds from the sale of unclaimed property are to be held in custody for the owner, who can reclaim the property from the State at any time. 765 ILCS §§ 1025/14 and 1025/19.

**ANSWER:** Defendant admits the allegations of paragraph 13.

14. The Act directs the State Treasurer to deposit all funds received pursuant to the Act, including funds from the liquidation of property, into the State Pension Fund, except that an amount may be retained by the State Treasurer to ensure prompt payment of approved claims filed by owners of unclaimed property. 765 ILCS § 1025/18.

**ANSWER:** Defendant denies the allegations of paragraph 14 as under Section 18 of the Act the State Treasurer is required to deposit all funds received under the Act into the Unclaimed Property Trust Fund, 765 ILCS 1025/18.

15. Pursuant to Section 105/8.12 of the State Finance Act, 30 ILCS § 105/8.12, all monies held in the State Pension Fund are to be used for the administration of the Act and for partial payment of the State's required contributions to designated State employee retirement systems. Section 105/8.12 further provides that each year the General Assembly is to appropriate the balance in the State Pension Fund, minus $5 million, to the various State pension systems. As of April 2017, Defendant held approximately $2.8 billion pursuant to the Act. Between January

2015 and April 2017 Defendant had returned more than $250 million to unclaimed property owners.

**ANSWER:** Defendant admits that monies held in the State Pension Fund may be used for the administration of the Act and the funding of the unfunded liabilities of the designated retirement systems; however, funds may also be used for expenses incurred by the Auditor General for administering the provisions of Section 2-8.1 of the Illinois State Auditing Act, 30 ILCS 5/2-8.1. Defendant admits that Section 105/8.12 provides that the General Assembly is to appropriate an amount estimated to be available during the fiscal year in the State Pensions Fund to the designated retirement systems while not reducing the balance below $5 million. Defendant admits the allegations of the final two sentences of paragraph 15.


16.     Property remitted to the Defendant and the State pursuant to the Act earns interest, dividends or other accruals, and/or is held in interest-bearing accounts or instruments, and such interest, dividends and other accruals are used by the State Pension Fund. The Treasurer periodically transfers all interest earned on unclaimed property to the State's General Revenue Fund to meet the State's financial obligations. 15 ILCS § 520/2.

**ANSWER:** As to the first sentence, the defendant admits that money held by the State is generally invested pursuant to state law. The defendant denies the remaining allegations of the first sentence. As to the second sentence, the defendant admits interest earned on monies that are or derive from unclaimed property are deposited into the General Revenue Fund pursuant to the State Finance Act, 30 ILCS 105/4.1(a).


17.     Unlike an escheat statute, in which actual title to abandoned property may eventually vest in the State after certain due process procedures are followed, the Act is purely custodial in nature, and title to abandoned property is never transferred from the owner to the State of Illinois. Thus, title and ownership at all times remain with the original owner of the property. As stated in the Prefatory Note to the Uniform Disposition of Unclaimed Property Act (Rev. 1966 Act), which, with amendment, was adopted by the State of Illinois and forms the basis of the current Act:

> The Uniform Act is custodial in nature -- that is to say, it does not result in the loss of the owner's property rights. The state takes custody and remains the custodian in perpetuity. . . . In this respect the measure differs from the escheat type of statute, pursuant to which the right of the owner is foreclosed and title to the property passes to the state.

**ANSWER:** Defendant admits the law is custodial in nature and does not involve a transfer of title to the State, except that the state may escheat certain unclaimed U.S. Savings Bonds in the possession of the State Treasurer, 765 ILCS 1025/8.1(c). Further answering, defendant notes that Illinois did not adopt the 1966 revisions to the 1954 Uniform Act.

18.     While the UPA recognizes that unclaimed property remains the private property of the owner and provides that unclaimed property owners may reclaim their property by filing a valid claim with the Treasurer, 765 ILCS § 1025/20(b), it also provides that "[w]hen property is paid or delivered to the State Treasurer under this Act, the owner is not entitled to receive income or other increments accruing thereafter, except that income accruing on unliquidated stock and mutual funds ... may be paid to the owner." 765 ILCS § 1025/15.

**ANSWER:** Defendant admits the allegations of paragraph 18.

19.     Although the Act gives the Treasurer discretion whether to return income on stocks or mutual funds held pursuant to the Act (as described in Paragraph 18, above), the Illinois Supreme Court in *Canel v. Topinka*, 212 Ill.2d 311, 818 N.E.2d 311 (2004), held that dividends issued on shares of stock while in State custody (and prior to the liquidation by sale) are the property of the owner and the owner is entitled to the dividends or just compensation for the taking of the dividends when the stock or its purchase price is claimed. The Illinois Supreme Court, however, limited its analysis to dividends issued on stock while held in State custody. On information and belief, the Treasurer does not return to the property owner any income or other increments which have accrued on mutual funds held in custody pursuant to the Act. Other than the narrow category of dividends on stock in state custody, the UPA does not compensate the owner of property for lost interest, dividends, or other earnings or accruals on the principal, or the loss of the beneficial use of property, while it is in State custody.

**ANSWER:** Defendant admits dividends earned on securities remitted to the State Treasurer pursuant to the Act prior to the sale of such securities are paid to owners who file a valid claim pursuant to the Act. Defendant denies the allegations of paragraph 19 related to mutual funds.

Defendant admits that under the Act the State Treasurer will not pay more for claims for

property, other than securities, than the amount remitted by a holder pursuant to the Act.

20.     Moreover, by its terms, the Act prohibits owners of unclaimed property from receiving interest, dividends, or other income or increments on any property that is liquidated or is a cash account, regardless of the nature of the property. 765 ILCS § 1025/15. In *Cwik v. Giannoulias*, 237 I11.2d 409, 930 N.E. 2d 990 (2010), the Illinois Supreme Court upheld the constitutionality of that provision. In 2013, however, the United States Court of Appeals for this Circuit, in considering the constitutionality of Indiana's Unclaimed Property Act, rejected the view that unclaimed property was abandoned property subject to escheat, and held that the state had taken a portion of plaintiff's unclaimed property and was required to compensate her for this taking. *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013). In Cerajeski, the Court of Appeals compared the taking of the interest on *Cerajeski's* principal to the taking of fruit that grows on trees. In both cases, the custodian of the property must compensate the owner for the custodian's taking and enjoyment of the fruits of the property.

**ANSWER:** Defendant admits that the Illinois Supreme Court upheld the constitutionality of

certain provisions of the Illinois Act in *Cwik*. Defendant admits that the Seventh Circuit's

*Cerajeski* decision held that the Indiana Act was unconstitutional in certain applications.

21.     In *Kolton v. Frerichs*, 869 F.3d 532, 2017 U.S. App. LEXIS 16009 (7th Cir. 2017), the Court of Appeals held that the same principles and precedents that governed the Indiana statute that was at issue in *Cerajeski* apply to the Illinois statute. The Court of Appeals reasoned (2017 U.S. App. LEXIS 16009, at *2-*3):

> The Supreme Court has held that the Takings Clause protects the time value of money just as much as it does money itself. *Brown v. Legal Foundation of Washington*, 538 U.S. 216, 235, 123 S. Ct. 1406, 155 L. Ed. 2d 376 (2003); *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 165-72, 118 S. Ct. 1925, 141 L. Ed. 2d 174 (1998); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162-65, 101 S. Ct. 446, 66 L. Ed. 2d 358 (1980). In *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013), we applied these precedents to an Indiana statute like the Illinois statute in this case. We held that a state may not take custody of property and retain income that the property earns. A state may charge a bookkeeping fee, which for small accounts may exceed the property's time value, but must allow the owner the benefit of the property's earnings, however large or small they turn out to be. Id. at 578-80.

8

**ANSWER:** Defendant admits the Court of Appeals applied principles of *Cerajeski* to the Illinois statute, and that this paragraph contains an accurate partial quotation from the Seventh Circuit decision in *Kolton v. Frerichs.*

22.     In July of 2017, the Illinois General Assembly enacted Public Law 100-0022, which will replace certain provisions of the Act with provisions from the Revised Uniform Unclaimed Property Act. That revision will become effective as of January 1, 2018. It will not change Illinois law in any respect that is material to the claims in this lawsuit, because, under the revised statute, Illinois will still not pay interest on money that it holds in custody as unclaimed property. Section 15-607 of Public Law 100-022 provides: "Interest on money is not payable to an owner for periods where the property is in the possession of the [Treasurer]." As of the date of this filing, the provisions of Public Law 100-022 do not yet have official cites in the Illinois Compiled Statutes (ILCS).

**ANSWER:**  Defendant denies that the provisions of Public Law 100-022 do not yet have official cites as the provisions of the Revised Uniform Unclaimed Property Act may be found at 765 ILCS 1026 on the General Assembly's website, www.ilga.gov. The defendant admits the remaining allegations of paragraph 22.[1]

### Plaintiffs' Property

23.     According to the Defendant's online records, Defendant holds Mr. Kolton's property in custody. That property includes unclaimed property of more than $100, which, upon information and belief as recalled by Mr. Kolton was held in an interest-bearing bank deposit account and delivered to the state by Bank One. Mr. Kolton is the owner under the Act with respect to that property, and with respect to other property as to which no claim has been filed. Defendant has at all times since held Mr. Kolton's property in custody subject to its being claimed by or on behalf of Mr. Kolton.

**ANSWER:**  Defendant admits there is an online record for an Anthony Kolton with property from Bank One, and other property is also listed to a person or persons named Anthony Kolton.

---

[1] Defendant notes that on November 8, 2017, both houses of the Illinois General Assembly passed SB 0868, which provides for the payment of interest with respect to certain forms of unclaimed property. The bill has not yet been signed by the Governor into law. Defendant may seek to amend this answer to assert mootness as a defense to some or all of the claims if SB 0868 becomes law.

Defendant has insufficient knowledge or information to form a belief as to the truth of the

remaining allegations of paragraph 23.

24.     While the Defendant held Mr. Kolton's property in custody, the state used the property for public purposes, including by investing the property and earning interest, and otherwise using it to fund the state's operations and programs.

**ANSWER:** Defendant has insufficient knowledge or information to form a belief as to the truth

of the allegation that the plaintiff is the Anthony Kolton whose property is being held. Further

answering, defendant admits that in general, unclaimed property in the form of money earns

interest in the state's custody and is used for public purposes by the State of Illinois.

25.     Under §§ 1025/15 and 1025/20 of the Act, should Plaintiff claim his property, Defendant will return the property delivered by Bank One and other holders, but will not pay just compensation for the confiscation of interest or use of that property during the period of custody.

**ANSWER:** Assuming a claim is filed and approved, defendant admits no interest will be paid.

Defendant denies the characterization that the interest is "just compensation."

26.     According to the Defendant's online records, Defendant holds Mr. Goldberg's property in custody. Mr. Goldberg is an owner under the Act with respect to that property. Defendant has at all times since held that property in custody subject to its being claimed by or on behalf of Mr. Goldberg.

**ANSWER:** Defendant admits there are online records for persons with the last name Goldberg

and with the initial "S" or "S. D." or "David S." Defendant has insufficient knowledge or

information to form a belief as to as to the truth of the allegation that the plaintiff is a Mr.

Goldberg whose property is being held, and if so, what the property is.

27.     While the Defendant held Mr. Goldberg's property in custody, the state used the property for public purposes, including by investing the property and earning interest, and otherwise using it to fund the state's operations and programs.

**ANSWER:** Defendant has insufficient knowledge or information to form a belief as to the truth of the allegation that the plaintiff is the S. David Goldberg whose property is being held. Further answering, defendant admits that in general, unclaimed property in the form of money earns interest in the state's custody and is used for public purposes by the State of Illinois.

28.     Under §§ 1025/15 and 1025/20 of the Act, should Plaintiff claim his property, Defendant will return the property delivered by the holder, but will not pay just compensation for the confiscation of interest or use of that property during the period of custody.

**ANSWER:** Assuming a claim is filed and approved, defendant admits no interest will be paid. Defendant denies the characterization that the interest is "just compensation."

29.     According to the Defendant's online records, Defendant holds Mr. Sculley's property in custody. That property includes unclaimed property as follows: (a) property of less than $100, which was held in an interest-bearing savings account and delivered to the state by the University of Illinois Employees' Credit Union; and (b) property of less than $100, which was held in a checking account and delivered to the state by the University of Illinois Employees' Credit Union. Mr. Sculley is the owner under the Act with respect to that property, and with respect to other property as to which no claim has been filed. Defendant has at all times since held Mr. Sculley's property in custody subject to its being claimed by or on behalf of Mr. Sculley.

**ANSWER:** Defendant admits there are online records pertaining to a "Jeff Sculley," Jeffrey Sculley," and "Jeffrey S. Sculley,"  with listings of unclaimed property originally held by the University of Illinois Credit Union as to some of these names as described online. Defendant has insufficient knowledge or information as to whether these listings all refer to the same individual and if that person is the plaintiff.

30.     While the Defendant held Mr. Sculler's property in custody, the state used the property for public purposes, including by investing the property and earning interest, and otherwise using it to fund the state's operations and programs.

**ANSWER:** Defendant has insufficient knowledge or information to form a belief as to the truth

of the allegation that the plaintiff is the Mr. Sculley whose property is being held. Further

answering, defendant admits that in general, unclaimed property in the form of money earns

interest in the state's custody and is used for public purposes by the State of Illinois.

31.     Under §§ 1025/15 and 1025/20 of the Act, should Plaintiff claim his property, Defendant will return the property delivered by the University of Illinois Employees' Credit Union and other holders, but will not pay just compensation for the confiscation of interest or use of that property during the period of custody.

**ANSWER:**  Assuming a claim is filed and approved, defendant admits no interest will be paid.

Defendant denies the characterization that the interest is "just compensation."

## CLASS ACTION ALLEGATIONS

32.     Plaintiffs bring this action on their own behalf and as a class action pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure seeking declaratory and prospective injunctive relief on behalf of the following class (the "Class"):

> All persons or entities (including their heirs, assignees, legal representatives, guardians, administrators, and successors in interest) whose property is being held, or has been held in the custody of the State of Illinois under the Illinois Uniform Disposition of Unclaimed Property Act, 765 ILCS § 1§ 1025/1, *et seq*. (or under the revised version of that statute that goes into effect on January 1, 2018), and whose property has been returned or will be returned at any time on or after March 29, 2013.

**ANSWER:** Defendant admits plaintiffs seek to bring this suit as a class action. Defendant denies

the remaining allegations of paragraph 32.

33.     The members of the Class are so numerous that joinder of all members is impracticable. There are currently hundreds of thousands of persons or entities who own property presumed abandoned and held in custody by Defendant under the Act. In a press release dated July 17, 2017, Defendant announced that he was holding more than $2 billion in unclaimed property in custody, and that in the most recent fiscal year he had returned more than $159 million in property to owners. The average amount of each claim is too small to warrant an individual action challenging the Act's constitutionality, making joinder of all class members impracticable.

**ANSWER:** Defendant admits the allegations of paragraph 33.

34.     Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs' property is being or has been held in custody under the Act by Defendant and, while in state custody, is or was subject to the same provisions of the Act that prohibit the state from compensating other owners of unclaimed property for lost interest or earnings on that property or for its use.

**ANSWER:**  Defendant denies the allegations of paragraph 34.

35.     Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel competent and experienced in class action litigation.

**ANSWER:** Defendant admits the allegations of paragraph 35, that is, plaintiffs' counsel is

competent to be class counsel if a class is certified.

36.     There are questions of law and fact common to the Class, including the following:

   a.     whether the state's retention of interest, dividends and other earnings or accruals on unclaimed property is a taking for which just compensation is due;

   b.     whether the state's use of unclaimed property in its custody for public purposes is a taking for which just compensation is due;

   c.     the proper measure of compensation for the Class;

   d.     the amount of interest, earnings and benefit realized by the state from the use of the Class' unclaimed property; and

e.      the appropriate injunctive and declaratory relief for the Class.

**ANSWER:** Defendant admits there may be some common questions of law and fact among

claimants of unclaimed property depending on the type of property in the State's custody.

Defendant denies the remaining allegations of paragraph 36.


37.     Plaintiffs' claims arise out of the same common course of conduct by
Defendant giving rise to the claims of the other members of the Class. Defendant has acted and
refused to act on grounds that apply generally to the Class so that injunctive and declaratory
relief are appropriate.

**ANSWER:**  Defendant denies the allegations of paragraph 37.

**COUNT I**
**(CLAIM FOR DECLARATORY AND PROSPECTIVE INJUNCTIVE RELIEF**
**ON BEHALF OF PLAINTIFFS AND THE CLASS)**

38.     Plaintiffs reallege Paragraphs 1-37 as though fully set forth herein.

**ANSWER:**  Defendant incorporates the answers to paragraphs 1-37.


39.     Plaintiffs bring this Count I individually and on behalf of the Class
described above.

**ANSWER:**  Defendant admits plaintiffs purport to bring Count I individually and on behalf of a

class.


40.     As the Court of Appeals for the Seventh Circuit has recognized, the Fifth
Amendment to the United States Constitution protects not only the principal of unclaimed
property in the custody of the state, but also the "fruits" of the property (that is, the interest,
accruals or other benefit of the property's earnings that attaches to the property or that is
associated with the ownership of the property, including the time value of money). Accordingly,
upon return of their unclaimed property, Plaintiffs and the members of the Class are entitled to
just compensation for loss occasioned by the state's taking of the fruits of their property in
violation of the Fifth Amendment to the U.S. Constitution.

**ANSWER:** Defendant admits the Seventh Circuit has stated claimants may in some circumstances have a claim for interest accrued on some forms of unclaimed property. Defendant denies the remaining allegations of paragraph 40.

41.     While the amount of just compensation will depend on the circumstances, the measure of just compensation should be based on the value of the property taken and returned to the owner, and should take into account the time value of money and the value to the state of the benefit conferred from beneficial use of the property.

**ANSWER:** Defendant denies the allegations of paragraph 41.

42.     The Defendant's unlawful course of conduct will continue absent a declaration from this Court that Defendant's conduct violates the rights of the Plaintiffs and the members of the Class and an injunction from this Court requiring the Defendant to change the course of conduct that is described above.

**ANSWER:** Defendant denies the allegations of paragraph 42.

43.     Plaintiffs and the members of the Class are entitled to a judgment declaring their rights with respect to the conduct set forth in this Complaint. Therefore, judgment may issue under 28 U.S.C. § 2201, *et seq*.

**ANSWER:** Defendant denies the allegations of paragraph 43.

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendant as follows:

A.     Declaring that this action may be maintained as a class action pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the Class defined above and that Plaintiffs are proper Class representatives and designating their counsel as Class Counsel;

B.     Declaring that the state's confiscation of interest, dividends, earnings, or other fruits of the property delivered to the state and used for public purposes under the Act (and under the revision under Public Law 100-0022) is a taking of property within the meaning of the Fifth Amendment to the U.S. Constitution for which the state is required to pay just compensation;

C.     Declaring that the proper measure of just compensation is the value of the property taken and returned to the owner, taking into account the time value of money and value to the state of the benefit of the property;

D.      Declaring the standard for Plaintiffs and the members of the Class for measuring the value of property taken;

E.      Declaring that Defendant must pay just compensation according to the standard determined by this Court, and issuing an injunction to ensure that the State complies with that Declaration when returning property to owners of unclaimed property;

F.      Awarding Plaintiffs their attorneys' fees and reimbursement of their expenses, pursuant to 42 U.S.C. § 1988 and applicable principles of equity; and

G.      Awarding such other and further relief as the Court deems just and proper.

**ANSWER:**  Defendant denies plaintiffs are entitled to the relief sought.


Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois                    By:     _/s/ Thomas A. Ioppolo_
                                                        Thomas A. Ioppolo
                                                        Michael D. Arnold
                                                        Assistant Attorneys General
                                                        100 W. Randolph Street, 13th Floor
                                                        Chicago, Illinois 60601
                                                        (312) 814-7198 / 4491
                                                        tioppolo@atg.state.il.us
                                                        marnold@atg.state.il.us