UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTHONY D. KOLTON, S. DAVID )
GOLDBERG, and JEFFREY S. SCULLEY, )
individually and on behalf of )
a class of all others similarly situated, )
)
                Plaintiffs, )
)
    v. ) 16 C 3792
)
MICHAEL W. FRERICHS, )
Treasurer of the State of Illinois, )
)
                Defendant. )

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Plaintiffs Anthony D. Kolton, S. David Goldberg, and Jeffrey S. Sculley (collectively, "Plaintiffs") bring this class action against Defendant Michael W. Frerichs ("Frerichs"), challenging the constitutionality of a provision of the Illinois Uniform Disposition of Unclaimed Property Act, 765 ILCS § 1025/1, *et seq.* ("UPA" or the "Act"). Before the Court is Plaintiffs' Motion for Class Certification ("Motion") pursuant to Federal Rule of Civil Procedure 23. For the following reasons, Plaintiffs' Motion is denied.

## BACKGROUND

Plaintiffs' Amended Complaint ("Complaint") challenges the constitutionality of the UPA, claiming that the Act authorizes the State to take certain private property

for public use without just compensation. Plaintiffs sue the Treasurer of the State Illinois, Frerichs, in his official capacity. The Act applies to personal property that is held by a third party (the "holder"), such as a bank, corporation, or public utility. Under the Act, personal property is "presumed abandoned" if its owner has not communicated with the holder regarding the property or has not otherwise indicated interest in the property for a period of time. The holder of "presumed abandoned" property must attempt to notify the owner, and, if the owner does not claim the property, the holder is required to deliver the property to the Treasurer.

Once in his custody, Frerichs places the funds (or in the case of tangible property, the proceeds from the sale thereof) into the Unclaimed Property Trust Fund. According to Plaintiffs, property that is submitted to Frerichs in accordance with the Act "earns interest, dividends or other accruals," and is sometimes "held in interest-bearing accounts or instruments." The interest earned on unclaimed property is deposited into the General Revenue Fund pursuant to the State Finance Act, 30 ILCS 105/4.1(a).

The Act is not an escheat statute; it is purely custodial in nature. While Frerichs retains custody of the property, title to the property remains with the owner. The owner may reclaim his or her property from the State at any time. An owner who makes a claim on such property, however, is entitled only to the property that the holder submitted to the State (or the proceeds from the sale thereof)—"the owner is

not entitled to receive income or other increments accruing thereafter."[1] 765 ILCS § 1025/15. In essence, Plaintiffs allege, the Act prohibits owners from receiving interest, dividends, or other income or increments earned on their property while in the State's custody.

Plaintiffs allege that the Act, by allowing the State to retain interest and other income on unclaimed property, as well as beneficially use the property without paying the owner, constitutes a taking without just compensation. The named Plaintiffs are all owners of property that is currently in Frerichs' custody. They allege that their property has been used for "public purposes, including by investing the property and earning interest, and otherwise using it to fund the state's operations and programs." Plaintiffs assert that under Sections 1025/15 and 1025/20 of the Act, if Plaintiffs claim their property, Frerichs will return it, but he will not compensate Plaintiffs for the interest accrued and seized by the State, nor for the State's use of the property while in its custody.

Plaintiffs bring this action on their own behalf and as a class action seeking declaratory and injunctive relief. They request the Court to (1) declare that the State is required to pay just compensation for its taking of property while in its custody and determine the proper measure of just compensation, and (2) issue an injunction to

---

[1] The provision continues: "…except that income accruing on unliquidated stock and mutual funds after July 1, 1993, may be paid to the owner." 765 ILCS § 1025/15. Plaintiffs' claims do not involve unliquidated stock or mutual funds, so the statute prevents Plaintiffs from receiving any interest earned on their property.

ensure that Frerichs complies with the Court's declaration.[2] Plaintiffs now seek class certification.

## **LEGAL STANDARD**

Class certification is governed by Federal Rule of Civil Procedure 23, under which the party seeking certification must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)–(4). The proposed class must also satisfy at least one of the three requirements listed in Rule 23(b). Plaintiffs rely on Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Finally, the class must be "sufficiently definite that its members are ascertainable." *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 493 (7th Cir. 2012).

Plaintiffs bear the burden "to demonstrate, by a preponderance of the evidence, that they have met each requirement of Rule 23." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015). "A class may only be certified if the trial court is

---

[2] Illinois has since amended the Act to require the Treasurer to pay interest on an "interest-bearing demand, savings or time deposit" that is "paid or delivered to the administrator on or after July 1, 2018." 765 ILCS 1026/15-607. This amendment does not affect the claims before us as the proposed class members' property has already been delivered to the State. For any additions to the class, the amendment similarly will not affect the claims for any property owners whose property is delivered to the State before July 1, 2018.

satisfied, after a rigorous analysis, that the prerequisites for class certification have been met." *Id.* at 373 (internal quotations and citations omitted). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (7th Cir. 2011). The Court may consider the merits "only to the extent…that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

## DISCUSSION

Plaintiffs seek certification for the following class: "All persons who are owners of property in the Illinois unclaimed property program that is in the form of money." Plaintiffs contend that the proposed class satisfies all of the requirements of Rule 23(a) and 23(b)(2).

The parties agree that the proposed class meets two of the four requirements under Rule 23(a). Plaintiffs allege, and Frerichs does not dispute, that the number of putative class members is in the hundreds of thousands of persons or entities who own money property presumed abandoned and held in custody by Frerichs. Plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1). Additionally, Frerichs concedes that Plaintiffs' counsel are competent to be class counsel and satisfy the adequacy and fairness requirement of Rule 23(a)(4).

5

We focus our analysis on the remaining requirements, commonality and typicality, which "tend to merge." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). Commonality is satisfied where the claims "depend upon a common contention that is capable of class-wide resolution" and "determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015) (citing *Wal-Mart*, 564 U.S. at 349–52). Commonality also requires Plaintiffs to show that the class members "have suffered the same injury." *Wal-Mart*, 564 U.S. at 349–50.

Typicality exists when the representative Plaintiffs' claims have the "same essential characteristics as the claims of the class at large." *Danis v. USN Commc'ns, Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999). A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [Plaintiffs'] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006).

Frerichs contends that (1) the proposed class is overbroad and presents dissimilar questions of fact and law, and (2) controlling case law limits Plaintiffs' claims (and the potential class) to those involving interest-bearing accounts. For his position, Frerichs cites the Seventh Circuit decisions of *Kolton v. Frerichs*, 869 F.3d 532 (7th Cir. 2017), and *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013), on which Plaintiffs rely. He claims that interest-bearing accounts were the sole focus in both

6

cases, and therefore those cases cannot be read as precedent for Plaintiffs to obtain relief *beyond* the scope of interest-bearing accounts. Frerichs further identifies various types of property that could be converted to "money" once in the State's custody, such as unclaimed checks, jewelry in a safety deposit box, or stock dividends. He asserts that these different types of property do not present common questions of law or fact. Plaintiffs argue that neither Seventh Circuit case considered the nature or form of the unclaimed property before it was deposited into the unclaimed property program in the State's custody. They also argue that it is irrelevant whether the property was earning interest *before* it was placed in the State's custody—so long as the property earned interest while in the State's custody. Plaintiffs believe property owners are entitled to that interest once the State returns their property.

That is not so. In *Cerajeski*, the Seventh Circuit considered the constitutionality of an analogous Indiana statute, the Indiana Unclaimed Property Act. The court held that the State's confiscation of the interest of plaintiff's property was a taking for which just compensation was due. *Cerajeski*, 735 F.3d at 583. Plaintiffs concede that the *Cerajeski* court focused on the interest-bearing aspect of the plaintiff's bank account in determining that the statute constituted a taking. Still, Plaintiffs insist that *Cerajeski*'s holding is not limited to interest-bearing accounts. The language in *Cerajeski*, however, makes clear that the holding of the case applies

specifically to interest-bearing accounts. The Seventh Circuit analyzed relevant Illinois case law as follows:

> [In *Cwik v. Giannoulias*, 237 Ill. 2d 409 (2010),] [t]he interest in question was interest the state had earned after taking custody of the plaintiff's property; the owner had not earned any interest on the property when it was in his custody. To give the interest to the owner when he reclaimed the principal would therefore have given him a windfall. The court distinguished its earlier decision in *Canel v. Topinka*, 212 Ill. 2d 311 (2004), which had held unequivocally that Illinois's version of the uniform act does not permit a taking of interest if, as in the present case, the owner's property was earning interest…when the state took custody, and would have continued earning it had the state not taken custody.

*Cerajeski*, 735 F.3d at 581 (internal citations omitted). Illinois case law explicitly distinguishes between property that was earning interest before it was placed in the State's custody and property that was not previously earning interest. An Illinois appellate court explained the rationale behind this distinction:

> [I]t is not what the State gained but what the property owner lost that determines whether a taking requiring compensation has occurred…[T]here is no evidence that the plaintiffs' property in this case was producing any interest until the Treasurer took possession of it under the Act. While the State may have gained the interest income, the plaintiffs failed to plead that they were receiving interest or expected to receive interest on the funds remitted to the State under the Act[.] Simply put, the State's gain did not establish a loss on the part of the plaintiffs.

*Cwik v. Topinka*, 389 Ill. App. 3d 21, 31–32 (1st Dist. 2009).

Next, Plaintiffs note that *Kolton* did not consider the form of the unclaimed asset prior to deposit into the unclaimed property program. Instead, the *Kolton* court generally acknowledged that "[t]he Supreme Court has held that the Takings Clause

protects the time value of money just as much as it does money itself." 869 F.3d at 533. It also summarized *Cerajeski* as holding that "a state may not take custody of property and retain income that the property earns." *Id*. Plaintiffs take these statements to mean that the taking of *any* money, regardless of its form before it was delivered to the State, requires a return of that money plus interest earned because of the "time value of money."

Plaintiffs are misguided. The Seventh Circuit made a general comment about the Takings Clause and the protection it affords. It was not directly addressing the Illinois statute at hand, nor was it considering Illinois case law interpreting the statute. It was not tackling the issue raised in the parties' briefing regarding whether property owners are entitled to interest earned by the State on their previously non-interest-bearing accounts. In fact, the issue before the Seventh Circuit in *Kolton* was subject-matter jurisdiction, not whether property owners are entitled to interest earned on their property. The Seventh Circuit's generalized iteration of the Takings Clause and the *Cerajeski* holding does not change Illinois law as interpreted by both Illinois state courts and the Seventh Circuit itself in *Cerajeski*.

With the case law in mind, we are certain that Plaintiffs' proposed class is overly broad and would necessarily raise dissimilar questions of law and fact. Plaintiffs attempted to achieve commonality by reframing the class as those whose property was already in the form of money when it was delivered to the State and those whose non-cash property was sold by the Treasurer after delivery and thus

liquidated into cash. According to Plaintiffs, because all of the property is now in the form of money, their claims raise a "common contention that is capable of class-wide resolution." *Chi. Teachers Union*, 797 F.3d at 434.

By focusing on the form of the property now that it is in the State's custody, Plaintiffs neglect the case law that makes explicit that property owners are only entitled to the interest on their property if they were already earning interest on it before the State took custody. It would be difficult to apply this law across-the-board to the proposed class because it would first require a determination of whose property was previously earning interest and whose was not. "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id*.

Here, Plaintiffs' proposed class may include members whose property was previously earning interest and those whose property was not. This precludes commonality. Furthermore, typicality does not exist where class representatives have to rely on a different legal theory than the rest of the class. *See Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 307 F.R.D. 475, 482 (N.D. Ill. 2015). As Frerichs points out, even the named Plaintiffs' claims may be atypical, as the Complaint specifically describes only Kolton's property, an interest-bearing account, which very well may be different than Goldberg's or Sculley's. Plaintiffs' proposed class thus does not satisfy the commonality and typicality requirements of Rule 41(a), and their Motion is denied.

Finally, Frerichs raises a point that is worthy of short discussion in case Plaintiffs desire to reframe their class and seek certification again. Frerichs argues that any injunctive relief sought by the proposed class must be prospective, not retrospective. Plaintiffs seem to agree with Frerichs, pointing out that the class is defined in such a way that only persons who are still property owners under the program, *i.e.*, those who have not yet claimed their property or whose claims are still pending, will benefit from declaratory and injunctive relief. Thus, Frerichs' concern about retrospective relief should be relieved. Frerichs further contends that the proposed class' right to interest should begin from the date of the injunction going forward. Such a determination is beyond the scope of class certification and is not yet ripe for consideration.

## **CONCLUSION**

For the aforementioned reasons, Plaintiffs' Motion for Class Certification is denied. It is so ordered.

_____
Charles P. Kocoras
United States District Judge

Dated: 3/28/2018