In the
# United States Court of Appeals
### For the Seventh Circuit

_____

No. 18-2432

S. DAVID GOLDBERG,

          *Plaintiff-Appellant*,

v.

MICHAEL W. FRERICHS, Treasurer of Illinois,

          *Defendant-Appellee*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 C 3792 — **Charles P. Kocoras**, *Judge*.

_____

SUBMITTED DECEMBER 14, 2018 — DECIDED JANUARY 2, 2019

_____

Before EASTERBROOK, KANNE, and ROVNER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. An earlier opinion in this case concluded that people whose property is taken into custody by Illinois under the state's Disposition of Unclaimed Property Act, 765 ILCS 1026/15-607, are entitled to receive the time value of their property (that is, interest or other earnings), less reasonable custodial fees. *Kolton v. Frerichs*, 869 F.3d 532 (7th Cir. 2017); see also *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013). On remand the district court de-

2 No. 18-2432

clined to certify the proposed class, ruling that, despite what our opinion said, owners of property in the state's custody are entitled to be compensated for the time value of money only if the property was earning interest at the moment the state took it into custody. 2018 U.S. Dist. LEXIS 51062 (N.D. Ill. Mar. 28, 2018). This meant that the class had internal divisions that made certification inappropriate. The court then granted summary judgment to the state on the claim of S. David Goldberg, one of the putative class representatives, whose property had not been earning interest before the state took custody of it. The judge entered a partial final judgment under Fed. R. Civ. P. 54(b), leading to this appeal.

For the proposition that the owner receives the property's time value only if the property was earning interest in private hands the district court relied principally on *Cwik v. Topinka*, 389 Ill. App. 3d 21 (2009), a state court's decision that precedes both *Kolton* and *Cerajeski* and interprets a state statute rather than the Takings Clause of the Constitution. The proposition is untenable, as we have already explained:

> The Supreme Court has held that the Takings Clause protects the time value of money just as much as it does money itself. *Brown v. Legal Foundation of Washington*, 538 U.S. 216, 235 (2003); *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 165–72 (1998); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162–65 (1980). In *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013), we applied these precedents to an Indiana statute like the Illinois statute in this case. We held that a state may not take custody of property and retain income that the property earns. A state may charge a bookkeeping fee, which for small accounts may exceed the property's time value, but must allow the owner the benefit of the property's earnings, however large or small they turn out to be. *Id.* at 578–80.

*Kolton*, 869 F.3d at 533. The property's owner is entitled to "income that the property earns" less custodial fees; what the property earns in the state's hands does not depend on what it had been earning in the owner's hands.

To see this, consider a simple example. Owner puts a rare coin in a safe deposit box, then neglects to pay the annual rental. Bank turns the coin over to the state under the Disposition of Unclaimed Property Act. The state sells the coin and invests the proceeds. The coin was not earning interest while in the safe deposit box but was an investment property: Owner hoped that its market price would rise. If the state kept the coin and returned it to Owner on demand, then the state would not owe interest; Owner could sell the coin and obtain any change in value while it was in the state's custody. But if the state sells the coin and cuts off the possibility of appreciation, then Owner is entitled to the earnings on the invested cash as the best substitute. The fact that the coin was not earning interest in the safe deposit box would not detract from the fact that its price could rise. The loss of that time value is compensated by giving Owner the benefit of interim earnings.

Goldberg did not have a coin. He had a check—or, rather, the payor that had made out a check to Goldberg had the instrument because he had not claimed it, and the payor delivered it to the state when the statute required. A check represents cash, which cannot appreciate as a coin, stamp, or painting might. But the principle is the same: cash has time value even if not invested. Holding cash is sensible for a person who fears that prices of stocks, bonds, and other investments will decline. If the state turns the check into cash and makes an investment on the owner's behalf (and against the

Case: 1:16-cv-03792 Document #: 69 Filed: 01/24/19 Page 4 of 5 PageID #:313
Case: 18-2432    Document: 00713356993    Filed: 01/24/2019    Pages: 5

4	No. 18-2432

wishes of someone who did not want to invest), then it is vital to turn any gain over to the owner. The Takings Clause does not set up a situation in which someone who wanted to be "in cash" bears the risk of loss as market conditions change without any prospect of offsetting gain. That would make the owner worse off. (To put this differently, cash has an option value—the option to invest or refrain from investing—that is lost if the state invests without the owner's consent. That loss has a compensable value.)

*Brown v. Legal Foundation of Washington* holds that a state need not hand over earnings if the amount of the principal is so small that (in the Court's words) it "cannot earn net interest"—in other words, when administrative expenses exceed the return on investment. 538 U.S. at 224. The statutory system under review in *Brown* required lawyers to turn over small client trust funds so that they could be pooled, and when pooled earn net interest. The principal would be returned to counsel when they needed to disburse it to clients; the state kept the interest for other uses. The Justices concluded that this system did not offend the Takings Clause because, by definition, the money could not have earned a net return in the absence of the pooling and the owner could not have lost anything. No loss, no need for compensation. *Id*. at 235–41. Illinois could use *Brown* on remand to contend that it does not owe interest on small amounts, such as the $100 it held on behalf of Goldberg. Amounts as slight as $100 probably cannot earn net interest. But this has nothing to do with how the owner held or invested the money or other property before it came into the state's hands.

It may be hard to administer the line established by *Brown*. That will be among the district court's tasks if the

No. 18-2432 5

state contends on remand that particular parcels in its custody could not earn net interest in private hands. All we decide today is that it does not matter under *Brown*, or any other decision by the Supreme Court or this court, whether property that *is* able to earn net interest was in an interest-bearing account before its transfer to the state. (This conclusion also may lead the district court to reconsider its ruling on class certification.)

The judgment is vacated, and the case is remanded for proceedings consistent with *Kolton* and this opinion.