# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY D. KOLTON, S. DAVID GOLDBERG, JEFFREY S. SCULLEY, and HENRY C. KRASNOW, individually and on behalf of classes of all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 16-cv-3792 ) Hon. Charles P. Kocoras ) |
| MICHAEL W. FRERICHS, Treasurer of the State of Illinois, | ) ) ) ) |
| Defendant. | ) |

## **AGREEMENT OF SETTLEMENT**

This Agreement of Settlement ("Settlement Agreement") is entered into by and between Plaintiffs in this Action for themselves and on behalf of the F. R. Civ. P. Rule 23(b)(2) Class they represent and the putative Rule 23(b)(3) Settlement Class they seek to represent, on the one hand, and Defendant Michael W. Frerichs, Treasurer of the State of Illinois, on the other.

**WHEREAS**, on March 29, 2016, Plaintiffs Anthony Kolton and David Goldberg commenced the Action under 42 U.S.C § 1983 as a putative class action against Defendant alleging that the Illinois Uniform Disposition of Unclaimed Property Act violated the Fifth and Fourteenth Amendments to the United States Constitution because it denied just compensation for the taking of Plaintiffs' unclaimed property; and

**WHEREAS**, on June 20, 2016, Defendant moved for an order dismissing the Complaint in the Action for lack of subject matter jurisdiction, which motion the Court granted on September 16, 2016; and

1

**WHEREAS**, Plaintiffs appealed the District Court's order to the United States Court of Appeals for the Seventh Circuit, which reversed the District Court in part, holding that Plaintiffs were entitled to seek prospective relief in federal court on their claim that the refusal to pay owners of unclaimed property the benefit of the property's earnings while in state custody was an unconstitutional taking, and remanded the Action for further proceedings on that claim, and affirmed the dismissal of the claim for damages on behalf of those whose property had been returned on the ground that the claim was against the State and the State was not a person that could be sued under § 1983, *Kolton v. Frerichs*, 869 F.3d 532 (7th Cir. 2017); and

**WHEREAS**, on October 10, 2017, the Court granted Plaintiffs Kolton, Goldberg, and Jeffrey Sculley leave to file an Amended and Supplemental Complaint seeking equitable relief on behalf of a F.R. Civ. P. Rule 23(b)(2) class; and

**WHEREAS**, on February 1, 2018, Plaintiffs moved for certification of a F.R. Civ. P. Rule 23(b)(2) class of all persons who are owners of property in the Illinois unclaimed property program in the form of money; and

**WHEREAS**, Defendant opposed the motion for class certification as overbroad because it included persons whose money had not been held in an interest-bearing account before delivery to the State; and

**WHEREAS**, on March 28, 2018, the District Court denied Plaintiffs' motion for class certification because the proposed class did not satisfy the commonality requirement, and Plaintiff Goldberg, whose property was not earning interest before delivery to the State, had no claim for just compensation; and

**WHEREAS**, based on this ruling, Plaintiff Goldberg filed a motion for entry of a F.R. Civ. P. Rule 54(b) final judgment on his claim, which the District Court granted on June 20, 2018 and entered final judgment dismissing Plaintiff Goldberg's claims; and

**WHEREAS**, Plaintiff Goldberg appealed the entry of judgment dismissing his claim to the United States Court of Appeals for the Seventh Circuit, and the Seventh Circuit reversed the District Court's dismissal of Plaintiff Goldberg's claim, holding that the owner of unclaimed property is entitled to income that the property earns while in state custody regardless of whether the property had been earning income in the owner's hands, *Goldberg v. Frerichs,* 912 F.3d 1009 (7th Cir. 2019); and

**WHEREAS**, on April 22, 2019, Plaintiffs renewed their motion for class certification, and on June 20, 2019, the District Court granted this motion and certified a F. R. Civ. P. Rule 23(b)(2) class of "all persons who are owners of property in the Illinois unclaimed property program that is in the form of money"; and

**WHEREAS**, during June, July and August, 2019, the parties engaged in informal discovery, including conferences and the exchange of written questions and answers, relating to the Treasurer's investment of unclaimed property held in state custody, including earnings on the property in the Unclaimed Property Trust Fund, the number and amount of claims made by owners of unclaimed property annually and the length of time unclaimed property was held in the Unclaimed Property Trust Fund before being claimed.  In addition, Plaintiffs' counsel consulted with an expert economist on what might be a reasonable return on unclaimed property in the form of money held by the Treasurer; and

**WHEREAS**, Plaintiffs presented a settlement demand to the Treasurer on August 19, 2019, and the Treasurer made a counter-proposal on October 10, 2019. Thereafter, counsel for the parties met and conferred on several occasions, and the Treasurer provided additional information in response to follow up questions from Plaintiffs; and

**WHEREAS**, after extensive arms-length negotiations and Plaintiffs' counsel's consultation with their expert economist, the Parties reached an agreement in principle to settle the Action on January 22, 2020, and after further arms-length negotiations over certain terms, memorialized their agreement in a Memorandum of Understanding dated March 11, 2020; and

**WHEREAS**, Plaintiffs and Defendant desire to document fully their agreement in principle and resolve and settle the claims of the Plaintiffs and the Rule 23(b)(2) Class and the Rule 23(b)(3) Settlement Class against Defendant as set forth herein;

**NOW, THEREFORE,** it is hereby stipulated and agreed, by and among the Parties, by and through their duly authorized counsel, and subject to approval by the Court, that the Action shall be settled and compromised and dismissed with prejudice and the Released Claims shall be released, upon and subject to the following terms and conditions:

1. **Definitions.**

As used in this Settlement Agreement, capitalized terms and phrases not otherwise defined have the meanings provided below:

1.1     "Action" shall mean the lawsuit captioned *Kolton v. Frerichs*, Case No. 16-cv-3792, which was filed and remains pending and unresolved in the United States District Court for the Northern District of Illinois, Eastern Division and has been assigned to the Honorable Charles P. Kocoras.

.       1.2      "Attorneys' Fees Award" means the amount awarded to Plaintiffs' Counsel to compensate them for their fees, costs, and expenses in connection with investigating, prosecuting, and settling the Action, as provided for in Section 3.2.5 below.

1.3      "Rule 23(b)(2) Class" shall mean all persons who are owners of Unclaimed Property held in the form of money by the Treasurer as of the date of entry of the Preliminary Approval Order.

1.4      "Rule 23(b)(3) Settlement Class" shall mean all owners of Unclaimed Property whose Unclaimed Property claims were paid or approved for payment from August 22, 2017 through the date of entry of the Preliminary Approval Order.

1.5      "Class List" shall mean a complete list in electronically readable form reasonably satisfactory to Plaintiffs' Counsel of all Rule 23(b)(3) Settlement Class Members, including any account/claim number(s) or other identifying designation made by the Treasurer, the date or dates on which their Unclaimed Property was delivered to the Treasurer, if applicable the date on which their Unclaimed Property was converted to money, and the date(s) and amount of all claims paid or, if not paid, approved for payment on or after August 22, 2017.

1.6      "Class Members" shall mean Persons who are members of the Rule 23(b)(2) Class or the Rule 23(b)(3) Settlement Class.

1.7      "Court" shall mean the United States District Court for the Northern District of Illinois, Eastern Division.

1.8      "Defendant" shall mean Michael Frerichs, Treasurer of the State of Illinois, or any predecessor or successor in office.

1.9      "Defendant's Press Release" shall mean a press release about the Settlement to be published by Defendant and provided to Plaintiffs prior to execution of this Settlement

Agreement with reasonable opportunity for comment and consent, which consent shall not be unreasonably withheld.

1.10   "Treasurer" shall mean the Treasurer of the State of Illinois, or any successor to the Treasurer's current duties regarding Unclaimed Property.

1.11   "Fairness Hearing" shall mean the hearing to be held by the Court to determine, pursuant to Rule 23 of the Federal Rules of Civil Procedure, whether this Settlement Agreement is fair, reasonable, and adequate.

1.12   "Final," when used in connection with any court order or judgment, shall mean (i) if no appeal is taken, the date on which the time to appeal has expired, and (ii) if any appeal is taken, the date on which all appeals have been finally disposed of in a manner resulting in the affirmance of the Judgment.

1.13   "Final Judgment" shall mean the order and the judgment to be entered by the Court, pursuant to the Federal Rules of Civil Procedure, approving this Settlement Agreement and dismissing the Action as to the Released Parties on the merits and with prejudice, in the form attached hereto as Exhibit B.

1.14   "Future Claimants" shall mean all persons who become owners of Unclaimed Property held by the Treasurer in the form of money after the date of the entry of the Preliminary Approval Order and either file a valid claim for that property or are otherwise paid their property.

1.15   "Rule 23(b)(3) Settlement Class Notice" shall mean the Notice pursuant to F. R. Civ. P. 23(e) to be sent by Defendant to the last known email address, or if not available, to the last known mailing address of each member of the Rule 23(b)(3) Settlement Class, in substantially the form attached hereto as Exhibit A-1, or as otherwise approved by the Court.

1.16    "Notice Program" shall mean the actions specified by the Court in the Preliminary Approval Order to publicize and notify Class Members regarding the Settlement and their rights in connection with the Settlement and shall include the Summary Notice as set forth in Sections 3.2.1. and 3.2.2 of this Agreement, the Rule 23(b)(3) Settlement Class Notice, as set forth in Section 3.2.3 of this Agreement and the information to be displayed on the homepage and FAQ section of the Treasurer's website, as set forth in Section 3.2.2 of this Agreement.

1.17    "Parties" shall mean Plaintiffs and Defendant.

1.18    "Person" shall mean an individual, committee, partnership, corporation, governmental entity, or any other form of entity or organization.

1.19    "Plaintiffs" shall mean Anthony D. Kolton, S. David Goldberg, Jeffrey Sculley and Henry C. Krasnow, individually and on behalf of Members of the Classes they respectively represent.

1.20    "Plaintiffs' Compensation" shall mean a separate monetary amount Plaintiffs' Counsel shall ask the Court to award or that the Court actually awards to Plaintiffs in recognition of the effort and assistance they provided in the prosecution of this Action, over and above any amounts they may otherwise receive under Section 2.3 of the Settlement Agreement. The amount Plaintiffs' Counsel request for any Plaintiff shall not exceed $2,500.

1.21    "Plaintiffs' Counsel" shall mean Terry Rose Saunders and Arthur T. Susman.

1.22    "Plaintiffs' Press Release" shall mean a press release about the Settlement to be published by Plaintiffs and provided to Defendant prior to execution of this Settlement Agreement with reasonable opportunity for comment and consent, which consent shall not be unreasonably withheld.

1.23    "Released Plaintiff Parties" shall mean Plaintiffs, Class Members, and Plaintiffs' Counsel.

1.24    "Plan of Distribution" shall mean the method of distributing compensation to Rule 23(b)(3) Settlement Class Members, and those Rule 23(b)(2) Class Members whose claims are paid or approved prior to the date the Final Judgment becomes Final, as set forth in Sections 2.8 through 2.10 or otherwise ordered by the Court.

1.25    "Preliminary Approval Order" shall mean an order in the form attached hereto as Exhibit A.

1.26    "Summary Notice" shall mean text in the form attached hereto as Exhibit A-2.

1.27    "Released Claims" shall have the meaning set forth in Section 5.2.

1.28    "Released Parties" shall mean Michael Frerichs, Treasurer of the State of Illinois and his representatives and successors in office, and the State of Illinois including every department, agency, instrumentality, or division of the State of Illinois and their Representatives.

1.29    "Releases" shall mean the releases set forth in Section 5.

1.30    "Representatives" shall mean representatives, attorneys, agents, directors, officers, or employees.

1.31    "Settlement" shall mean the settlement to be consummated under this Settlement Agreement.

1.32    "Settlement Agreement" means this Agreement of Settlement and any accompanying Exhibits, any subsequent amendments and Exhibits to such amendments.

1.33    "Settlement Just Compensation Measure" shall mean the interest rate used by the Treasurer to calculate interest due to the Rule 23(b)(2) Class Members, the Rule 23(b)(3) Settlement Class Members and Future Claimants as set forth in Section 2.3.

1.34    "Start Date" shall mean the latest of August 22, 2017, the date Unclaimed

Property is delivered to the Treasurer, or the date that the Treasurer converts unclaimed property

that is not in the form of money to Unclaimed Property as defined in Section 1.36 below.

1.35    "Successor" shall mean a Person's estate, legal representatives, heirs, successors,

or assigns, including successors or assigns that result from corporate mergers or other structural

changes.

1.36    "Unclaimed Property" shall mean property in the form of money held by

Defendant pursuant to the Illinois Uniform Disposition of Unclaimed Property Act, the Illinois

Revised Uniform Unclaimed Property Act ("Amended Act") or any subsequently enacted Illinois

statute governing Unclaimed Property.

1.37    "Unclaimed Property Trust Fund" shall mean a designated State Trust Fund in

which Unclaimed Property is held by the Treasurer for a period of time and invested by the

Treasurer along with other monies in the Illinois State Treasury.

**2.**    **Terms of the Settlement**.

2.1    Certification of a Rule 23(b)(3) Settlement Class.

2.1.1.   The Parties will request that the Court certify a Rule 23(b)(3) Settlement

Class, solely for purposes of the Settlement Agreement and this Settlement, comprised of all

owners of Unclaimed Property whose claims were paid or approved for payment during the

period beginning August 22, 2017 and continuing through the date of the entry of the

Preliminary Approval Order. Owners of Unclaimed Property as of the date of the entry of the

Preliminary Approval Order whose claims are approved for payment after the date of entry of the

Preliminary Approval Order shall be included in, and become members of, the Rule 23(b)(2)

Class.

2.1.2    Defendant agrees to the certification of the Rule 23(b)(3) Settlement Class only for the purposes of effectuating the Settlement Agreement. Defendant continues to maintain that a Rule 23(b)(3) class could not qualify for class certification in a contested class certification context, particularly given the Seventh Circuit's ruling that Plaintiffs could not pursue a claim for damages against the State under 42 U.S.C. § 1983, *see Kolton v. Frerichs*, 869 F.3d 532 (7th Cir. 2017). Defendant reserves all rights to object to the propriety of certification of a Rule 23(b)(3) class in this Action in all other contested contexts and for all other purposes.

2.2    The Parties will provide Notice in accordance with Federal Rules of Civil Procedure 23(c)(2)(A), 23(c)(2)(B), and 23(e)(1) to all members of the Rule 23(b)(2) Class and Rule 23(b)(3) Settlement Class. The Treasurer may pay the expenses associated with providing such Notice from the Unclaimed Property Trust Fund or from other funds appropriated to the Treasurer, provided that: (a) such payments will not reduce the amount of just compensation due or paid to any Class Member or Future Claimant, and (b) the Treasurer shall at all times maintain sufficient funds in the Unclaimed Property Trust Fund to make prompt payment of claims and just compensation on claims of Class Members and Future Claimants.

2.3    The Settlement Just Compensation Measure for the Rule 23(b)(2) Class and the Rule 23(b)(3) Settlement Class shall be an interest rate, calculated monthly and compounded monthly, that is the greater of the actual rate of return the Treasurer has earned on the Unclaimed Property Trust Fund or the percentage increase, if any, in the Consumer Price Index for all Urban Consumers (CPI-U), for all items published by the United States Department of Labor. When calculating interest for the month in which a claim is paid, the Treasurer shall use the most recent rate of return earned by the Treasurer and CPI-U data available at the time the claim is approved. The Settlement Just Compensation Measure shall be applied to the total gross amount of each

claim. The Treasurer will continue to use the Settlement Just Compensation Measure to calculate and pay compensation to Future Claimants until such time as the General Assembly passes any statute providing for a different method of calculating compensation.

2.4     Time Period for Calculation of Just Compensation.

2.4.1     Members of the Rule 23(b)(2) Class shall be entitled to just compensation from the Start Date and ending on the earlier of (a) the expiration of 10 years after the Start Date or (b) the date on which payment is made to the owner. The Treasurer will continue to calculate and pay just compensation to Future Claimants on this basis until such time as the General Assembly passes any statute providing for a different method of calculating compensation.

2.4.2     Members of the Rule 23(b)(3) Settlement Class shall be entitled to just compensation from the Start Date to the date their Unclaimed Property claim has been or is paid.

2.5     The Treasurer shall make just compensation payments to the Rule 23(b)(2) Class, the Rule 23(b)(3) Class, and Future Claimants from funds held in the Unclaimed Property Trust Fund, provided that: (a) such payments will not reduce the amount of just compensation due or paid to any Class Member or Future Claimant, and (b) the Treasurer shall at all times maintain sufficient funds in the Unclaimed Property Trust Fund to make prompt payment of claims and just compensation on claims of Class Members and Future Claimants.

2.6     The Treasurer may assess a one-time administrative fee of up to $5.00, deductible only from interest due on Unclaimed Property, for each claimed property paid to any member of the Rule 23(b)(2) Class, Rule 23(b)(3) Settlement Class, and all Future Claimants. This administrative fee may only be charged so long as no other administrative fee is imposed on principal or interest earned on Unclaimed Property while in the State's custody, whether such other fee is imposed by statute, administrative regulation or otherwise. This provision shall not

11

be interpreted to prevent the General Assembly from increasing the administrative fee charged to Future Claimants, or from imposing a different or alternative fee on payments to Future Claimants.

2.7     The Settlement of this Action will not deprive anyone entitled to interest under the Revised Uniform Unclaimed Property Act ("Amended Act"), 765 ILCS 1026/15-607, of their rights under that Act. Class Members entitled to interest under the Amended Act shall be entitled to receive any greater amount due under this Settlement.

2.8     Defendant will distribute just compensation payments to the members of the Rule 23(b)(3) Settlement Class, and to those members of the Rule 23(b)(2) Class whose claims are paid or approved before the date the Final Judgment becomes Final, without requiring those Class Members to file a claim.

2.9     Defendant may require the Rule 23(b)(3) Settlement Class Members, and those Rule 23(b)(2) Class Members whose claims are paid or approved before the date the Final Judgment becomes Final, whose current mailing address cannot be verified through Defendant's reasonable efforts to confirm that their address is correct before sending interest payments to them. If a Class Member whose mailing address cannot be verified does not confirm that his or her address is correct within 120 days of the date that Defendant requests confirmation of the Class Member's address (the "Confirmation Request Date"), the Class Member will continue to have a right to receive the interest payment for a period of two years following the Confirmation Request Date, subject to Section 2.10. Defendant will promptly identify to Plaintiffs' Counsel those Class Members in the Class List whose mailing address is not confirmed; however, Plaintiffs' Counsel agrees that they will not seek attorneys' fees for any efforts to contact these class members.

2.10    A Rule 23(b)(3) Settlement Class Member, or a Rule 23(b)(2) Class Member whose claim is paid or approved before the date the Final Judgment becomes Final, who fails to confirm his or her address within 120 days of the Confirmation Request Date may be required to submit a request for the interest payment and to verify his or her address before interest will be paid. Any such request must be made within two years following the Confirmation Request Date.

2.11    This Settlement relates only to the measure and payment of just compensation and nothing in this Settlement Agreement affects the rights of persons who claim to be owners of Unclaimed Property to challenge the Treasurer's approval or disapproval of their claim for return of their principal or the amount of that claim.

2.12    Plaintiffs and Class Members agree that the Released Parties shall have no responsibility whatsoever to any federal, state, or local taxing authority for the tax liability or consequences, if any, arising from the payment of the consideration recited herein, and that all such responsibility is exclusively that of the Plaintiffs and Class Members. Nothing herein shall constitute an admission or representation that any such taxes will or will not be due.

2.13    Notwithstanding any other provision of this Agreement, nothing in this Agreement should be interpreted to prevent the General Assembly from changing the measure of just compensation paid, the method of calculating such compensation, the period for which such compensation must be paid, any administrative fees that may be assessed, or any other matter related to Unclaimed Property. If the General Assembly changes the measure of just compensation paid, the method of calculating such compensation, the period for which such compensation must be paid, or the administrative fees that may be assessed, the Treasurer shall adhere to the terms of this Settlement Agreement for all Class Members whenever the terms of this Settlement Agreement are more favorable (*i.e.*, would result in a greater net amount paid to

the Class Member), but shall follow the statute(s) enacted by the General Assembly rather than this Agreement, and may propose additional legislation and/or regulations that may not be consistent with this Agreement, for all Future Claimants. Nothing in this Agreement would bar any Future Claimant from challenging any such amended statute, whether in court or otherwise.

2.14    The Treasurer has an interstate exchange process ("Interstate Exchange") with unclaimed property programs of other states and United States jurisdictions ("Remitting Jurisdictions"). Pursuant to the Interstate Exchange, where the holder reported and remitted properties that should have been reported and paid to the Remitting Jurisdiction ("Exchange Properties"), the Treasurer turns over the Exchange Properties to the Remitting Jurisdiction. The Parties understand and agree that the Treasurer is not required to pay just compensation for Exchange Properties that the Treasurer remits to a Remitting Jurisdiction. The Treasurer will pay the Settlement Just Compensation Measure on Exchange Properties received by the Treasurer pursuant to the Interstate Exchange, starting from the date that the property is delivered to the Treasurer from the Remitting Jurisdiction.

3.    **Certain Required Actions**.

3.1    Upon Execution of the Settlement Agreement.

3.1.1    Commencing upon execution of this Settlement Agreement and continuing thereafter, Plaintiffs' Counsel and Defendant shall cooperate in good faith, including by taking all actions contemplated by this Settlement Agreement and any other actions which are or may become necessary by order of the Court or otherwise to carry out this Settlement Agreement and ensure that the Final Judgment becomes Final.

3.1.2    As soon as reasonably practicable upon execution of this Settlement Agreement, Defendant shall update the Rule 23(b)(3) Class List and provide the updated Class List to Plaintiffs' Counsel.

3.1.3    As soon as reasonably practicable upon execution of this Settlement Agreement, and not to exceed 15 business days of execution hereof, Plaintiffs will file the following: (a) Motion for an Order Preliminarily Approving the Settlement Agreement; (b) Motion for Leave to File Second Amended and Supplemental Complaint, which will add Henry C. Krasnow as a plaintiff and add the Rule 23(b)(3) Settlement Class; and (c) Motion to Certify a Rule 23(b)(3) Settlement Class and appoint Plaintiffs' Counsel as Counsel for the Classes.

3.1.4    Within 10 days of the filing of the Settlement Agreement with the Court, Defendant shall serve Notice of the proposed Settlement upon each appropriate state official in accordance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA Notice").

3.2    <u>Upon Entry of the Preliminary Approval Order</u>.

3.2.1    As soon as practicable upon the entry of the Preliminary Approval Order, the Treasurer shall include in the Notice to Claimants of the Approval of Payment of Principal to Owners of Unclaimed Property, or provide in a separate mailing or email message, the Summary Notice and reference to the homepage of its website http://icash.illinoistreasurer.gov and https://illinoistreasurer.gov, along with a request that these claimants notify the Treasurer of any change in their email or mailing address.  Within 14 business days of the entry of the Preliminary Approval Order, the Treasurer will include the Summary Notice in this Notice to Claimants and will continue to include the Summary Notice for a period of one year after entry of the Preliminary Approval Order or until Final Judgment is entered by the Court, whichever is later.

3.2.2.   Within 14 business days of the entry of the Preliminary Approval Order, or at such other time as specified therein, Defendant shall, at his sole cost and expense (1) cause the Summary Notice to be published once in a newspaper of national circulation and to be prominently displayed on the homepage of its website http://icash.illinoistreasurer.gov and https://illinoistreasurer.gov/ in a manner and position reasonably satisfactory to Plaintiffs' Counsel; (2) cause to be added to the FAQ section of the website, https://icash.illinoistreasurer.gov/app/faq-general one or more FAQs and answers to same, relating to the Settlement reasonably satisfactory to Plaintiffs' Counsel; and (3) issue Defendant's Press Release, which shall appear on the Defendant's website https://illinoistreasurer.gov/Office_of_the_Treasurer/Media_Center/Press_Releases, along with other Press Releases issued by the Defendant. Defendant shall thereafter cause all subsequent Court rulings to be displayed on the website. Within 14 business days after Defendant issues Defendant's Press Release, Plaintiff will issue Plaintiffs' Press Release. The Treasurer will include these notices for a period of two years after entry of the Preliminary Approval Order, or until Final Judgment is entered by the Court, whichever is later.

3.2.3   As soon as practicable upon the entry of the Preliminary Approval Order, and in any event within 20 business days of such entry, Defendant shall cause the Rule 23(b)(3) Settlement Class Notice to be sent by email to the last known email address, or if not available, to the last known mailing address of each member of the Rule 23(b)(3) Settlement Class, and to be displayed on the homepage of its website http://icash.illinoistreasurer.gov and https://illinoistreasurer.gov/, and Plaintiffs' Counsel and Defendant shall commence implementing the remaining portions of the Notice Program as they are respectively required to implement.

3.2.4    The Parties shall provide any further notice in the form of, and at the time, as directed by the Court.

3.2.5    Within 45 business days of the entry of the Preliminary Approval Order, Plaintiffs' Counsel will apply to the Court for Attorneys' Fees Award and reimbursement of expenses in accordance with F. R. Civ. P. 23(h), the federal statute, 42 U.S.C. § 1988, as applicable, and common law.  Defendant retains the right to challenge the amount of, or method for calculating, Plaintiffs' Counsel's fee request as well as the right to appeal any Attorneys' Fees Award. Any award of attorneys' fees or reimbursement of expenses shall be paid from the Unclaimed Property Trust Fund. The individual Plaintiffs currently named may apply to the Court for Plaintiffs' Compensation not to exceed $2,500 for each of them. These Plaintiffs shall be entitled to receive such payments as are awarded by the Court. Any award of Plaintiffs' Compensation shall be paid from the Unclaimed Property Trust Fund and shall not reduce the amount of just compensation due or paid to any Class Member or Future Claimant.

3.2.6    The rights of Class Members to object to the Settlement, or be heard at the Fairness Hearing, or to request exclusion from the Settlement Class shall be as set forth in the Preliminary Approval Order.

3.2.7    As soon as practicable upon entry of the Preliminary Approval Order, Defendant shall provide the Treasurer's calculations of the Settlement Just Compensation Measure with respect to the Rule 23(b)(3) Settlement Class Members and the Class List updated through the date of the Preliminary Approval Order to Plaintiffs' Counsel in a form and format and in such manner as is agreed upon between Plaintiffs' and Defendant's Counsel.

3.3 <u>Following Entry of Final Judgment</u>.

3.3.1   Commencing when the Final Judgment becomes Final, Defendant shall pay or cause to be paid to each Rule 23(b)(2) Class Member, in addition to the principal amount of his or her Unclaimed Property, interest equal to the Settlement Just Compensation Measure beginning on the Start Date and ending on the date the claim is paid. Interest shall be calculated and paid on principal for a period of up to ten years from the Start Date.

3.3.2   Commencing when the Final Judgment becomes Final, Defendant shall pay or cause to be paid to each Future Claimant, in addition to the principal amount of his or her Unclaimed Property, interest equal to the Settlement Just Compensation Measure beginning on the Start Date and ending on the date the claim is paid. Interest shall be calculated and paid on principal for a period of up to ten years from the Start Date. As set forth in Section 2.13, Defendant will continue to make such payments to Future Claimants unless or until the General Assembly makes any changes to the calculation of just compensation.

3.3.3   Commencing when the Final Judgment becomes Final, Defendant shall distribute interest equal to the Settlement Just Compensation Measure to the Rule 23(b)(3) Settlement Class Members, and the Rule 23(b)(2) Class Members whose claims have been paid, as set forth in Sections 2.8 through 2.10.

4.   **Conditions to Effectiveness of the Settlement**.

This Settlement shall become effective when the Court has entered the Final Judgment and the Final Judgment has become Final.

5.   **Releases**.

5.1 <u>Plaintiffs' Releases of the Released Parties</u>.  When the Final Judgment becomes Final, Plaintiffs on behalf of themselves and the Class Members release and forever discharge

with prejudice the Released Parties from all Released Claims, except that the Release under this Section shall not include covenants, obligations, or other provisions, or claims relating to the covenants, obligations or other provisions, set forth in this Settlement Agreement.

5.2 <u>Released Claims</u>. The Released Claims shall be any and all actual or potential, suspected or unsuspected, known or unknown, asserted or unasserted claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, and costs, whether arising under local, state or federal law, whether by statute, contract, common law, or equity, whether brought in an individual, representative, or any other capacity, actual or contingent, liquidated or unliquidated, that arise from or reasonably relate to the Action or the Settlement, including the Settlement Just Compensation Measure, the Plan of Distribution or Defendant's failure to pay just compensation on Unclaimed Property held by the Illinois Treasurer prior to August 22, 2017, subject to Section 5.1. This release does not apply to any future enactments by the General Assembly regarding Unclaimed Property.

5.2.1 When the Final Judgment becomes Final, with respect to any and all Released Claims, the Plaintiffs and the Class Members hereby expressly waive the provisions, rights and benefits of California Civil Code §1542 and any provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law which is similar, comparable or equivalent to California Civil Code §1542, which provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

5.2.2 When the Final Judgment becomes Final, Defendant releases and forever discharges with prejudice Plaintiffs, the Class Members, and Plaintiffs' Counsel (collectively, the

"Released Plaintiff Parties") from all Released Claims, except that the release under this Section shall not include the covenants or obligations, or claims relating to the covenants or obligations, set forth in this Settlement Agreement.

6. **Representations and Warranties.**

6.1     Plaintiffs represent and warrant that they have not assigned or otherwise transferred any interest in any Released Claims against any Released Parties and agree they will not assign or otherwise transfer any interest in any Released Claims.

6.2     Each Person executing this Settlement Agreement on behalf of any other Person represents and warrants to the other Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal whom such Person represents or purports to represent.

7. **Compromise of Disputed Claims.**

7.1     Subject to and without purporting to alter or modify the rulings in the decisions of the Seventh Circuit Court of Appeals in *Kolton* and *Goldberg*, the Parties agree that this Settlement Agreement embodies a compromise settlement of disputed claims and that nothing in this Settlement Agreement, including the furnishing of consideration, shall be deemed an admission or finding of wrongdoing or give rise to any inference of liability in this or any other proceeding. Neither the fact nor the terms of this Settlement Agreement shall be offered or received in evidence, in any action or proceeding between the Parties for any purpose, except in an action or proceeding arising under this Settlement Agreement or arising out of or relating to the Preliminary Approval Order or the Final Judgment.

7.2     The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement Agreement and for the purpose of entering orders

providing for any Attorneys' Fees Award. Neither the entry or the failure to enter, nor the finality or lack of finality, of orders respecting Attorneys' Fees Award or Plaintiffs' Compensation affect the Final Judgment or prevent the Final Judgment from becoming Final. All Parties submit to the jurisdiction of the Court for purposes of enforcing the Settlement Agreement. Further, all Parties agree that the Court shall have jurisdiction to settle any dispute that may arise from the interpretation of this Settlement Agreement.

## 8. <u>Termination of the Settlement Agreement</u>.

8.1     <u>Termination</u>.  This Settlement Agreement may not be terminated by the Parties except as provided in this Section, and in no instance may this Settlement Agreement be terminated after the Final Judgment becomes Final. This Settlement Agreement shall terminate if (a) the Court declines to approve the Settlement or declines to enter the Final Judgment; or (b) the Final Judgment entered by the Court is reversed or modified on appeal. This Settlement shall not terminate solely because a court of competent jurisdiction modifies, reverses, or fails to enter any order relating to an Attorneys' Fees Award, expenses, or Plaintiffs' Compensation.

8.2     <u>Consequences of Termination of the Settlement Agreement</u>.  If the Settlement Agreement is terminated, the following shall occur:

8.2.1    The Action shall for all purposes with respect to the Parties revert to its status as of March 10, 2020, provided Defendant shall receive no refund, repayment, or payment of Administration and Notice Expenses previously paid or incurred.

8.2.2    The certification of the Settlement Class shall automatically be vacated, and neither this Settlement Agreement nor any order of the Court certifying the Settlement Class will be binding on any of the Settling Parties.

8.2.3    All provisions of this Settlement Agreement shall be null and void, except as otherwise provided herein.

8.3     If the General Assembly should change the measure of just compensation paid, the method of calculating such compensation, the period for which such compensation must be paid, any administrative fees that may be assessed, or any other matter related to Unclaimed Property governed by this Agreement, such change to the statutes shall not constitute termination of the agreement under this section. If the General Assembly changes the measure of just compensation paid, the method of calculating such compensation, the period for which such compensation must be paid, or the administrative fees that may be assessed, the Treasurer shall adhere to the terms of this Settlement Agreement for all Class Members whenever the terms of this Settlement Agreement are more favorable, but shall follow the statute(s) enacted by the General Assembly for Future Claimants. Nothing in this Agreement would bar any Future Claimant from challenging any such amended statute, whether in court or otherwise.

**9.    Miscellaneous Provisions.**

9.1     Governing Law.  This Settlement Agreement shall be governed by the laws of the State of Illinois without giving effect to the conflict of laws or choice of law provisions thereof except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

9.2.    Sovereign Immunity Not Waived.  This Agreement shall not be construed to constitute a waiver of sovereign immunity of the State of Illinois or the Treasurer of Illinois.

9.3     Amendment.  The Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties and approved by the Court, except the

Signers may mutually agree to extend deadlines set forth herein as reasonably necessary to consummate this Settlement.

9.4    <u>Waiver</u>.  The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving party. The waiver by any Party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

9.5    <u>Construction</u>.  None of the Parties to this Settlement Agreement shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter.

9.6    <u>Headings</u>.  The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

9.7    <u>Singular and Plural</u>.  Definitions apply to the singular and plural forms of each term defined.

9.8    <u>References to a Person</u>.  References to a Person are also to the Person's Successors.

9.9    <u>Further Assurances</u>.  Each of the Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver such documents and take such actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement.

9.10    <u>Notices</u>.  Any notice, demand, or other communication contemplated under this Settlement Agreement (other than the CAFA Notice), notices in connection with the Notice Program, or other notice given at the direction of the Court) shall be in writing and shall be

deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth

below and delivered by both (i) email and (ii) registered or certified mail (postage prepaid) or

delivered by reputable express overnight courier:

PLAINTIFFS:

Terry Rose Saunders
THE SAUNDERS LAW FIRM
120 North LaSalle Street, Suite 2000
Chicago, IL 60602
(312) 444-9656
Email:  tsaunders@saunders-lawfirm.com

Arthur Susman
LAW OFFICES OF ARTHUR SUSMAN
55 West Wacker Drive, Suite 1400
Chicago, IL 60601
(847) 800-2351
Email:  arthur@susman-law.com


DEFENDANT:

Sarah Newman
Office of the Illinois Attorney General
General Law Bureau
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
Tel: 312-814-6131
Email:  snewman@atg.state.il.us, sarah.newman@illnois.gov

Illinois State Treasurer
Attn: Legal Department
219 State House
Springfield, IL 62706
Tel.: (866) 458-7327
Email: lduque@illinoistreasurer.gov

Any Party may change the address as which it is to receive notice by written notice

delivered to the other Parties in the manner described above.

9.11     Entire Agreement.  This Settlement Agreement contains the entire agreement among the Parties relating to this Settlement. It specifically supersedes any settlement terms or settlement agreements that were previously agreed upon orally or in writing.

9.12     Counterparts.  This Settlement Agreement may be executed by exchange of originals or faxed or scanned and emailed executed signature pages, and any signature transmitted by facsimile or email for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement. This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

9.14     Binding Effect.  This Settlement Agreement binds and inures to the benefit of the Parties hereto and the Class Members, their administrators, executors, and Successors.

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement on the dates set forth below.

Dated: 6/2/2021

_____

Anthony D. Kolton
Plaintiff and Class Representative

Dated:_____

_____

S. David Goldberg
Plaintiff and Class Representative

Dated:_____

_____

Jeffrey S. Sculley
Plaintiff and Class Representative

Dated:_____

_____

Henry C. Krasnow
Plaintiff and Class Representative

THE SAUNDERS LAW FIRM

Dated: June 8, 2021

By:_____

Terry Rose Saunders
120 North LaSalle Street, Suite 2000
Chicago, IL 60602
(312) 444-9656
Email: tsaunders@saunders-lawfirm.com

LAW OFFICES OF ARTHUR SUSMAN

Dated: June 2, 2021

By:_____

Arthur Susman
55 West Wacker Drive, Suite 1400
Chicago, IL 60601
(847) 800-2351
Email: arthur@susman-law.com

*Counsel for Plaintiffs and the Classes*

26

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement on the dates set forth below.

Dated:_____

_____
Anthony D. Kolton
Plaintiff and Class Representative

Dated:_____6/3/2021_____

_____
S. David Goldberg
Plaintiff and Class Representative

Dated:_____

_____
Jeffrey S. Sculley
Plaintiff and Class Representative

Dated:_____

_____
Henry C. Krasnow
Plaintiff and Class Representative

THE SAUNDERS LAW FIRM

Dated: June 8, 2021

By:_____
Terry Rose Saunders
120 North LaSalle Street, Suite 2000
Chicago, IL 60602
(312) 444-9656
Email: tsaunders@saunders-lawfirm.com

LAW OFFICES OF ARTHUR SUSMAN

Dated: June 2, 2021

By:_____
Arthur Susman
55 West Wacker Drive, Suite 1400
Chicago, IL 60601
(847) 800-2351
Email: arthur@susman-law.com

*Counsel for Plaintiffs and the Classes*

26

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement on the dates set forth below.

Dated:_____          _____
                                     Anthony D. Kolton
                                     Plaintiff and Class Representative


Dated:_____          _____
                                     S. David Goldberg
                                     Plaintiff and Class Representative


Dated: 6/2/21                        _____
                                     Jeffrey S. Sculley
                                     Plaintiff and Class Representative


Dated:_____          _____
                                     Henry C. Krasnow
                                     Plaintiff and Class Representative


                                     THE SAUNDERS LAW FIRM

Dated: June 8, 2021                  By: _____
                                         Terry Rose Saunders
                                         120 North LaSalle Street, Suite 2000
                                         Chicago, IL 60602
                                         (312) 444-9656
                                         Email: tsaunders@saunders-lawfirm.com


                                     LAW OFFICES OF ARTHUR SUSMAN

Dated: June 8, 2021                  By: _____
                                         Arthur Susman
                                         55 West Wacker Drive, Suite 1400
                                         Chicago, IL 60601
                                         (847) 800-2351
                                         Email: arthur@susman-law.com

                                     *Counsel for Plaintiffs and the Classes*

26

**IN WITNESS WHEREOF,** the Parties have executed this Settlement Agreement on the dates set forth below.

Dated: _____

_____
Anthony D. Kolton
Plaintiff and Class Representative

Dated: _____

_____
S. David Goldberg
Plaintiff and Class Representative

Dated: _____

_____
Jeffrey S. Sculley
Plaintiff and Class Representative

Dated: June 8, 2021

_____
Henry C. Krasnow
Plaintiff and Class Representative

THE SAUNDERS LAW FIRM

Dated: June 8, 2021

By: _____
Terry Rose Saunders
120 North LaSalle Street, Suite 2000
Chicago, IL 60602
(312) 444-9656
Email: tsaunders@saunders-lawfirm.com

LAW OFFICES OF ARTHUR SUSMAN

Dated: June 2, 2021

By: _____
Arthur Susman
55 West Wacker Drive, Suite 1400
Chicago, IL 60601
(847) 800-2351
Email: arthur@susman-law.com

*Counsel for Plaintiffs and the Classes*

26

KWAME RAOUL
ATTORNEY GENERAL OF ILLINOIS

Dated: 6-8-2021

By: *Sarah Newman*

Sarah Newman
Office of the Illinois Attorney General
General Law Bureau
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
Tel: 312-814-6131
Email: snewman@atg.state.il.us
         sarah.newman@illinois.gov

*Counsel for the Defendant*

OFFICE OF THE ILLINOIS STATE TREASURER

*Michael Frerichs*

Michael W. Frerichs
Treasurer

Dated: 6-10-2021

By: *G. Allen Mayer*

G. Allen Mayer, Chief of Staff
Office of the Illinois State Treasurer
219 State House
Springfield, Illinois 62706
217-782-2211
Email: amayer@illinoistreasurer.gov

27