```
1                    IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
2                             EASTERN DIVISION

3
     ANTHONY D. KOLTON, et al.,            )   Docket No. 16 C 3792
4                                          )
                         Plaintiffs,       )
5                                          )
                  vs.                      )
6                                          )
     MICHAEL W. FRERICHS, Treasurer of     )
7    the State of Illinois,                )   Chicago, Illinois
                                           )   December 16, 2021
8                         Defendant.       )   9:50 o'clock a.m.

9

10        TRANSCRIPT OF TELEPHONIC PROCEEDINGS - STATUS AND MOTION
                 BEFORE THE HONORABLE CHARLES P. KOCORAS

11

12   APPEARANCES:

13   For the Plaintiffs        THE SAUNDERS LAW FIRM
     Via Telephone:            BY:  MS. TERRY ROSE SAUNDERS
14                             120 N. LaSalle St., Suite 2000
                               Chicago, Illinois  60602
15
                               LAW OFFICES OF ARTHUR SUSMAN
16                             BY:  MR. ARTHUR SUSMAN
                               1540 N. Lake Shore Drive, 3N
17                             Chicago, IL 60610

18   For the Defendant         MS. SARAH HUGHES NEWMAN
     Via Telephone:            Illinois Attorney Genera's Office
19                             100 W. Randolph St., 13th Floor
                               Chicago, Illinois  60601
20
     Court Reporter:           MS. JOENE HANHARDT
21                             Official Court Reporter
                               219 S. Dearborn Street, Suite 1744-A
22                             Chicago, Illinois  60604
                               (312) 435-6874
23
                 * * * * * * * * * * * * * * * * *
24                       PROCEEDINGS RECORDED BY
                         MECHANICAL STENOGRAPHY
25                  TRANSCRIPT PRODUCED BY COMPUTER
```

1           THE CLERK:  16 C 3792, Kolton, et al., vs. Frerichs.

2    Status and motion for leave to file.

3           Please state your name for the record and the party

4    that you represent each and every time you speak.

5           MS. SAUNDERS (Via Telephone):  Good morning, your

6    Honor, Terry Saunders on behalf of --

7           THE COURT REPORTER:  Ms. Saunders, there is too much

8    static and you are not coming through.  Could you please repeat

9    yourself?

10          MS. SAUNDERS (Via Telephone):  I am having problems

11   with my phone.  You can't hear us?

12          THE COURT:  Oh, now you are much better, Ms. Saunders.

13          Good morning.

14          MS. SAUNDERS (Via Telephone):  Oh, all right.

15          Well, we will just keep it closer.  I don't --

16          MR. SUSMAN (Via Telephone):  More it closer.

17          MS. SAUNDERS (Via Telephone):  Okay.  All right.

18          Mr. Susman is here, also.

19          THE COURT:  Good morning, Mr. Susman.

20          MR. SUSMAN (Via Telephone):  Good morning.

21          THE COURT:  And I think Ms. Newman is here, also.

22          We had heard a little of your conversation before we

23   got official.

24          Ms. Newman, are you here?

25          MS. NEWMAN (Via Telephone):  Yes, your Honor.

```
 1              Sara Newman on behalf of the Treasurer.

 2              THE COURT:  Good morning, Ms. Newman.

 3              MS. NEWMAN (Via Telephone):  Good morning.

 4              THE COURT:  Anybody else on your side?

 5              MS. NEWMAN (Via Telephone):  I believe I am the only

 6   one here.

 7              THE COURT:  Okay.

 8              Well, I am going to -- the real issue -- any motion

 9   for leave to file, I think, that is oversized; all of that is

10   granted, but the real issue -- was the amount of fees that has

11   been contested in this case.  And that is what I am going to

12   address.

13              I have prepared a few remarks.  So, I will just read

14   them into the record and tell you what the outcome is at the

15   end of it.  It should not be terribly long.

16              We apologize for the delay in getting started.  The

17   pandemic is playing havoc with courtroom space.  And, so, here

18   we are.

19              I am in Judge Norgle's courtroom, but this is Judge

20   Kocoras.  So, do not mix up the two "Charles."  Okay?

21              (Laughter.)

22              MS. SAUNDERS (Via Telephone):  Okay.

23              THE COURT:  In any event, in this case the parties

24   agree that this is a common fund case, but disagree as to the

25   amount to be awarded under that methodology.
```

1          I ordered that plaintiffs' counsel provide to us what

2     a lodestar calculation would look like.  And they have done so.

3          Am I coming through okay to the lawyers on the phone?

4          Are you able to hear me?

5          MS. SAUNDERS (Via Telephone):  Yes, you are.  You are

6     to us, your Honor.

7          THE COURT:  Ms. Newman?

8          MS. NEWMAN (Via Telephone):  Yes, your Honor.  You are

9     coming through loud and clear.  Thank you.

10          THE COURT:  Okay, thank you.

11          The lodestar method produces 1706.15 hours of attorney

12     time and a lodestar total of $1,314,530.

13          The defendant has filed a response to plaintiffs'

14     supplemental declaration and has lodged a host of criticisms to

15     the supplemental declaration of counsel.

16          Among the criticisms are as follows:

17          One, the rates ranging from six to nine-hundred

18     dollars per hour are quite excessive when civil rights

19     litigators' top rates are four-hundred-and-fifty to

20     five-hundred-and-fifty dollars per hour.

21          Another criticism is it took too much time in the

22     district court briefing, researching, drafting and defending

23     the fee petition, and even class counsel's expert says a

24     multiplier of 7.23 falls at the high end of the range.

25          A true multiplier, it is argued, would be higher if

1   applied to more reasonable rates of hourly pay and reasonable

2   hours.

3          And, additionally, it is argued that the multipliers

4   used by plaintiffs' expert are in highly specialized areas and

5   sophisticated business entities as plaintiffs.

6          Many of the requested awards represented fairly low

7   percentages in exceptionally high settlements or judgments.

8   And it cites to their conclusion that the Seventh Circuit says

9   a multiplier of 2 may be a sensible ceiling.

10          Those are some of the criticisms.

11          Also, the use of junior lawyers, at lesser rates,

12   might have been appropriate for some of the work done, although

13   that puts in another layer of supervision.  And, so, whether

14   that is an end game or not, I do not know.

15          There is an excessive request for fees on fees.

16          The defendant has distinguished some cases with high

17   percentage of funds because the fee percentage, itself, was

18   pre-approved.  Not so in this case.

19          In any event, the bottom line, from the defense point

20   of view, is that any fee award should not exceed $2,629,060.

21   And I have considered that.  I have looked at a number of the

22   cases cited by both sides.

23          And since I have presided over this case from the

24   beginning, other than when a sojourn to the Court of Appeals

25   was undertaken in a couple of instances, I am quite familiar

1   with the case.  And here is both the plaintiffs' reply, and

2   reflective of my own thoughts; but, let me, at least for the

3   record, talk about what the plaintiffs say by way of

4   justification:  That they brought a highly risky class action

5   to overturn an unconstitutional state law; and, their efforts

6   produced a return of tens of millions of dollars to unclaimed

7   property owners; they were involved in two successful appeals

8   to the Seventh Circuit; and, the case, itself, and the law of

9   the case, established the right of unclaimed property owners to

10  income which the state earned while the property was in its

11  hands; and, that right of the return to the true property

12  owners does not depend on what the property owner had been

13  earning while the property was in the owners' hands.

14         It is argued in the plaintiffs' papers that no other

15  firm or lawyer has successfully brought such a case, at least

16  not in Illinois.

17         It is also argued to me that plaintiffs' counsel has

18  not only brought about successful appeals, but has settled the

19  case and helped establish a blueprint for all similar claims in

20  the future.

21         To be the first in any field is also to assume the

22  greatest possible risk in the endeavor undertaken, that will

23  never exist, again.

24         When you are second or third or fourth, there is

25  something to look forward to, by way of precedent.  Not in this

1   case.

2           In this type of case, reliance on the lodestar method

3   to set parameters on legal fee awards, while helpful in some

4   circumstances, cannot dictate the limits of any award.

5           The nature of the issues here and the risks to be

6   assumed dictate that a sophisticated lawyer would strike a

7   contingent fee arrangement rather than use a lodestar method of

8   compensation.

9           An undertaking for legal services, with the risks

10  presented due to unchartered Illinois legal territory, would

11  involve the common fund doctrine as the best and fairest way to

12  measure the worth of legal services, in my considered opinion.

13          The Treasurer has repeatedly used the description

14  "civil rights" to characterize the nature of this case, and

15  offered a comparison of approved fees in other civil rights

16  cases as a barometer for the legally-appropriate award.

17          The pure fact of the matter is that this is not what

18  is classically understood as a civil rights case.  The issues

19  here do not involve physical or unlawful harm to individual

20  citizens, but, rather, a failure to pay for possession and

21  possible use of property belonging to somebody else.

22          The underlying facts are unique onto themselves and

23  more closely approximate the tort of conversion or inverse

24  condemnation.

25          Many of defendant's cited cases involved claimed

1    violations of a person's rights and freedoms, making inapt fee

2    comparisons for dissimilar subject matter and procedures.

3         There are some instances when the lodestar method is

4    more appropriate in determining the proper award of fees and,

5    in other instances, when they can be helpful.

6         But super-imposing the results of the lodestar method

7    over a common fund percentage method, or mixing the methods

8    with predominance to the lodestar calculation, leads only to

9    the wide disparity between the parties that has been presented

10   to the Court for decision.

11        It is this Court's view that a capable and reasonably

12   sophisticated lawyer presented with this case in the first

13   instance by a plaintiff, or a class of plaintiffs in Chicago,

14   would take this case only on a contingent fee basis, based on

15   the anticipated needs of the case and the risks inherent in the

16   undertaking, including the real risk of loss.

17        Based on that premise, the percentage of the fund

18   doctrine is superior to the determination of the legal fees to

19   be awarded to plaintiffs' counsel, and is used by the Court as

20   a guide in its decision.

21        There is no decided case and no single methodology or

22   mathematical formula which supplies the answer as to the amount

23   of reasonable fees to be awarded.

24        The principal criteria in the determination of the

25   amount and which guides the analysis are as follows:

1          One, the uncertainty of the outcome of the lawsuit;

2     hence, the degree of risk in the legal undertaking by counsel.

3          Two, the skill and ability of counsel and the

4     representation they provided, both in the District Court, the

5     Court of Appeals and in helping fashion a settlement agreeable

6     to all of the parties and to this Court.

7          Alternatives to the resolution at hand would have

8     included time-consuming and lengthy administrative efforts to

9     calculate benefits to each class member at some cost and delay,

10    which, at all odds, would have been substantial.

11         The pioneering effort in bringing the action in the

12    first instance and, most significantly, achieving success and

13    prevailing in the courts, that is a major, major factor in my

14    analysis.

15         The strategies employed and the expertise in

16    effectuating the victories earned were, by any measure, first

17    rate.

18         As we all know, hindsight supplies perfect vision.  It

19    must be kept in mind the success for the plaintiffs was never

20    ordained at the outset of the proceedings.  The estimated

21    recovery to the class has been suggested to run from $47

22    million to $70 million.

23         Whatever it may turn out to be, the significance of

24    the result is undeniable and far reaching.

25         Having no simple or four-square guidance to determine

1   a fair and reasonable award to plaintiffs' counsel for their

2   fees, the Court is left to simply determine an amount which it

3   believes is fair and just and appropriate under the

4   circumstances.

5          And, so, that is precisely what I did in this case.  I

6   wrote down a variety of possible outcomes and possible fee

7   awards, looked at them all, considered the entirety of the

8   case, the difficulties I have alluded to in prosecuting in the

9   first instance, the successes achieved, the sophistication

10  necessary to argue both in the District Court and, especially,

11  in the Court of Appeals, and bring about the result that we are

12  now living with.

13         So, putting all of that together, and with no formula

14  to produce it, other than one's sense of what is fair and

15  appropriate, it is my determination that the fee award shall be

16  not in the amount claimed of $9.5 million, but, rather, $7.5

17  million, which I think is less than requested, but, actually,

18  candidly, considerably more than what the defendant thinks

19  would be fair.

20         That is what I think is fair:  $7.5 million.

21         And we have some additional expenses and costs of

22  $17,913.

23         And, so, that is the amount that I will assess by way

24  of costs.

25         And it is also my determination, although there is a

1   contest about it, that the fee shall be paid directly from the

2   Fund; and, that all of the beneficiaries of the work of the

3   lawyers be responsible for the payment of the fees, it should

4   come from the Unclaimed Property Fund, as opposed to any other

5   form, such as payment when each claimant get their share of

6   whatever the successful pot may be.

7           So, I think that covers all of the lingering issues in

8   the case.  And, as I say, that is my best judgment.

9           I think, probably, in all candor, there are other

10  possible awards that would also be deemed reasonable and

11  proper, but the one I settled was the one that I thought was

12  most appropriate under these special circumstances.

13          And I do not know what else I can add to my

14  presentation, but I am quite willing to answer any questions

15  you think I have left open, in covering what I thought was,

16  essentially, the final determination in this case.

17          Either side has the mike.

18          And I probably wound up displeasing both sides, but

19  that is in the nature of the proceeding.

20          (Laughter.)

21          MS. SAUNDERS (Via Telephone):  Right.

22          THE COURT:  Is there anything you want to add, Ms.

23  Saunders?

24          MS. SAUNDERS (Via Telephone):  Your Honor, there are

25  no questions.  And we just want to thank the Court really for

1   all of your hard work, reflected in certainly what you have

2   written today.  And we appreciate the positive comments that

3   you made.

4          And we also thank you for your patience during these

5   last couple years as we worked this agreement out.

6          So, I don't think we have any -- we certainly don't

7   have any -- questions.

8          And we really thank you and appreciate, you know, all

9   of the effort and hard work that you put into this.

10         THE COURT:  Well, you are quite welcome.

11         Ms. Newman, I know you are probably more unhappy than

12  Ms. Saunders, but I will compliment --

13         MS. NEWMAN (Via Telephone):  Well, I mean, obviously,

14  that is not the -- it is the -- outcome that we were hoping

15  for.  But we, obviously -- the thought that you -- you know,

16  the thought and consideration that you -- put into the issues,

17  clearly you did consider our arguments and our criticisms and

18  we do appreciate that.

19         One issue, it is really moot now, based on your

20  ruling, but I told -- I did tell -- plaintiffs' class counsel

21  that I would give you this information.  So, I am just, you

22  know, keeping my word and go ahead and say so:  That, as stated

23  in the Joint Status Report, the Treasurer has already begun

24  paying interest to the (b)(2) claimants on an on-going basis,

25  and will begin paying the (b)(3) claimants on December 20th, as

1   required by the final judgment.

2       And when making these payments, the Treasurer is not

3   deducting -- has not been deducting -- any amount from interest

4   payment for the attorneys' fees; and, the Treasurer withdraws

5   it argument that the attorneys' fees do need to be deducted

6   from the payment to class members.

7       Again, I know that is moot because you already held --

8   you just held the -- you just held that the payments should

9   come from the Fund, rather than being deducted from individual

10  payments.  But I just wanted to keep my word and tell you that.

11      I know that it's moot, but I will keep my word to

12  class counsel and tell you that we withdraw that argument.

13      THE COURT:  All right.

14      Well, I appreciate that.

15      What I did want to say was I thought your advocacy was

16  particularly helpful and vigorous.

17      While I did not, essentially, agree with some of it,

18  as I decided and expressed, the fact that you went to such

19  detail and supplied me with, in many instances, a compelling

20  point or position, was what helped me go through both sides'

21  claims and justifications for their respective positions.

22      So, whatever the ruling was and whoever it most

23  favored, without your, I think, even tenacious advocacy, it

24  would not have come out maybe the same way.  And, who knows, it

25  might have been a little higher.

1          But I will say that your research was quite helpful in

2     crystallizing my own thoughts and making my determination.  So,

3     that is what I wanted to tell you.  I appreciate that kind of

4     advocacy and it was well worth the exercise, whatever the

5     outcome.

6          All right.  I do not know if --

7          MS. SAUNDERS (Via Telephone):  Thank you, your Honor.

8          THE COURT:  I am not going to weigh into the thicket

9     of whether something has to be recalculated because some

10    payments have already been made, but I will leave that to the

11    lawyers and the administrators and the administration of the

12    Fund.

13         And, hopefully, that will close the case, from my

14    point of view.  All right?

15         Thank you, both sides.  Have a good day.

16         And, as we always say in the trade -- not that law is

17    a trade, but a profession -- we will see you on the next case.

18    Okay?

19         (Laughter.)

20         MS. SAUNDERS (Via Telephone):  All right.

21         We are ready for the next case, your Honor.

22         THE COURT:  All right.

23         MS. SAUNDERS (Via Telephone):  But, also, we want to

24    all wish you a very Merry Christmas and Happy New Year.

25         THE COURT:  The same to everyone who celebrates any of

15

1    the high holidays --

2              MS. SAUNDERS (Via Telephone):  Many of them.

3              THE COURT:  -- for which you believe.

4              Thank you so much.

5              Thank you, Ms. Newman.

6              MS. SAUNDERS (Via Telephone):  Thank you.

7              MS. NEWMAN (Via Telephone):  Thank you, your Honor.

8              THE COURT:  Okay.  Good day.

9              MS. NEWMAN (Via Telephone):  Good day.

10             MS. SAUNDERS (Via Telephone):  Thank you.

11             THE COURT:  All right.  Bye-bye.

12                         *   *   *   *   *

13   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
14

15   /s/ Joene Hanhardt              December 20, 2021
     Official Court Reporter
16

17

18

19

20

21

22

23

24

25